98 P.3d 789 (2004)
STATE of Washington, Respondent,
v.
Joseph Goodrich SIMMONS, Jr., Petitioner.
No. 74383-5.
Supreme Court of Washington, En Banc.
Argued May 25, 2004.
Decided October 7, 2004.
*790 Rita Joan Griffith, Seattle, for Petitioner.
Krista Kay Bush, Attorney General, Seattle, for Respondent.
JOHNSON, J.
This case requires us to determine whether RCW 9.94.070, which makes it a felony for a prisoner to commit a serious prison infraction after losing all potential earned early release credits, unconstitutionally delegates legislative authority to the Department of Corrections (DOC) or violates equal protection principles. The Court of Appeals held that the statute was neither void as an unconstitutional delegation of legislative authority nor violative of equal protection.[1] The court concluded that RCW 9.94.070 provides adequate procedural safeguards against arbitrary administrative action and abuse of discretion and is rationally related to the legitimate state objective of maintaining prison security. We affirm.

FACTUAL AND PROCEDURAL HISTORY
In October 2000, Joseph Goodrich Simmons, Jr., was convicted of second degree robbery in King County Superior Court. Simmons was placed in the custody of the DOC where, over a period of 14 months, he committed 46 separate violations of prison disciplinary rules.[2] Clerk's Papers (CP) at 7. As a result, Simmons lost all potential earned early release time credits.
On December 4, 2001, just one month before his release, Simmons committed another serious infraction.[3] CP at 48-49. Prison officials were unable to impose the recommended sanction of lost time credits for Simmons' infraction because he had no good time left to take.
The State charged Simmons with persistent prison misbehavior under RCW 9.94.070. This crime makes it a class C felony for any prisoner who has already lost all potential earned early release time credits to "knowingly" violate the prison disciplinary code. RCW 9.94.070(1) specifically states that:
An inmate of a state correctional institution who is serving a sentence for an offense committed on or after August 1, 1995, commits the crime of persistent prison misbehavior if the inmate knowingly commits a serious infraction, that does not constitute a class A or class B felony, after losing all potential earned early release time credit.
On March 7, 2002, Simmons filed a motion to dismiss the charge. He argued that Division Three of the Court of Appeals has held that RCW 9.94.070 constitutes an unlawful delegation of legislative authority to the DOC, State v. Brown, 95 Wash.App. 952, 977 P.2d 1242 (1999) (Brown I), aff'd on other grounds, State v. Brown, 142 Wash.2d 57, 11 P.3d 818 (2000) (Brown II), and violates equal protection principles. CP at 50-57.
The State argued, however, that RCW 9.94.070 is constitutional under the delegation doctrine because adequate procedural safeguards exist to prevent arbitrary prosecution. The State further argued that Division Three's holding in Brown I was not controlling because that decision was not affirmed on the basis that RCW 9.94.070 is an unconstitutional delegation of authority. Rather, *791 we held that the DOC erred by failing to promulgate its serious infraction rules under RCW 72.09.130[4] following the enactment of RCW 9.94.070. Brown II, 142 Wash.2d 57, 11 P.3d 818.[5]
The trial court agreed with the State and, on stipulated facts, found Simmons guilty of persistent prison misbehavior under RCW 9.94.070. CP at 78-84.[6] Simmons then filed a notice of appeal to Division Two of the Court of Appeals. CP at 96. Division Two affirmed the trial court and held that Division Three's holding in Brown I did not control this case. State v. Simmons, 117 Wash.App. 682, 684, 73 P.3d 380 (2003).
We accepted review of the Court of Appeals' decision to specifically determine whether RCW 9.94.070 unconstitutionally delegates legislative authority to the DOC or violates equal protection principles.

ANALYSIS

Delegation of Legislative Authority
The rule is well established that the legislature may constitutionally delegate authority to an administrative agency to implement statutory directives if two requirements are met. First, the legislature must provide standards to indicate what is to be done and designate the agency to accomplish it. Second, procedural safeguards must exist to control arbitrary administrative action and abuse of discretionary power. State v. Crown Zellerbach Corp., 92 Wash.2d 894, 900, 602 P.2d 1172 (1979) (citing Barry & Barry, Inc. v. Dep't of Motor Vehicles, 81 Wash.2d 155, 500 P.2d 540 (1972)).
Simmons does not dispute that the first requirement for the constitutional delegation of legislative authority is met in this case. RCW 9.94.070 provides the DOC with the authority to adopt rules to govern inmate behavior, and RCW 72.09.130 provides guidelines on how the DOC is to adopt rules for the prison disciplinary system.
Rather, Simmons maintains that RCW 9.94.070 does not meet the second requirement. Specifically, Simmons argues that the statute unconstitutionally delegates legislative authority to the DOC because "[it] contains inadequate safeguards against arbitrary administrative actions or abuses of discretion prior to loss of liberty by criminal conviction." Pet. for Review at 13. Simmons supports this argument by citing to Brown I, 95 Wash.App. 952, 977 P.2d 1242.
In Brown I, the defendant was charged with persistent prison misbehavior under RCW 9.94.070. The trial court held that the statute unconstitutionally delegated the power to define a serious infraction to the DOC and dismissed the charge. Division Three affirmed and held that the delegation was unconstitutional due to inadequate procedural safeguards to control against arbitrary administrative action or abuse of discretion by the DOC. We accepted review of Brown I and affirmed on the more narrow grounds that the DOC had failed to promulgate serious infraction rules under RCW 72.09.130 as required by RCW 9.94.070(2). We did not reach the issue of whether the statute unconstitutionally delegated legislative authority to the DOC.
The Court of Appeals in this case concluded that it was not bound by Division Three's decision in Brown I since Brown II did not address the constitutional issue. As a result, the Court of Appeals revisited the issue and determined that contrary to Division Three, RCW 9.94.070 constitutionally delegated legislative authority to the DOC. The Court of Appeals reasoned that the DOC cured the procedural defects that were present in *792 Brown I by repromulgating its infraction rules.
The Court of Appeals analyzed the second requirement under the three-part approach in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine whether RCW 9.94.070 provides sufficient procedural safeguards against arbitrary action and abuse of discretion. Under this approach, we balance (1) the private interest to be protected, (2) the risk of an erroneous deprivation of that interest by the government's procedures, and (3) the government's interest in maintaining the current procedures. Mathews, 424 U.S. at 335, 96 S.Ct. 893.
This approach is consistent with the framework found in Crown Zellerbach, 92 Wash.2d 894, 602 P.2d 1172, wherein we determined that RCW 9.94.070 provided sufficient procedural safeguards against arbitrary action and abuse of discretion. In Crown Zellerbach, the defendant was charged with failing to comply with the terms of a permit issued by the departments of game and fisheries for a hydraulic project. The departments adopted the permit conditions after public hearings, but the provisions were not formally promulgated as regulations under the Washington Administrative Code.
We held that the authority to issue the permits and place conditions upon them was a proper delegation of authority because the following procedural safeguards were sufficient under the statute: (1) the defendant was entitled to a second look at agency action through administrative channels, (2) judicial review was available under the clearly erroneous standard, and (3) the procedural safeguards that are normally afforded a defendant in a criminal prosecution were present. Crown Zellerbach, 92 Wash.2d at 901, 602 P.2d 1172.
The procedural safeguards articulated in Crown Zellerbach are also satisfied in this case. First, Simmons was entitled to a second look at agency action through administrative channels. In 1998, the DOC repromulgated its disciplinary code by adopting rules in accordance with the Administrative Procedure Act (APA), chapter 34.05 RCW, such as providing notice of the proposed rules, requesting public comment, conducting a hearing, and publishing the adopted rules through the code reviser's office.[7] The provisions of the disciplinary code contain procedural and notice safeguards. The disciplinary code specifically provided Simmons the opportunity to appeal any adverse disciplinary hearing finding to the prison superintendent. The code also required notifying Simmons of what conduct constituted a serious infraction and that such an infraction could result in a felony conviction under the persistent prison misbehavior statute if he no longer had any potential earned early release time credit available. WAC 137-28-190(2).
Second, the DOC's rule making process provided for public scrutiny and judicial review of disciplinary action. For instance, RCW 9.94.070 requires [the] DOC to designate serious infractions under RCW 72.09.130, which in turn directs [the] DOC to adopt by rule an incentive system that links inmate behavior with the receipt of earned early release days. This process is available to examine the action by the DOC before it adopts specific rules or institutes any criminal proceeding. If a criminal prosecution should arise, a defendant is entitled to all of the procedural safeguards that are afforded a defendant in a criminal prosecution.
We hold Simmons was provided with adequate procedural safeguards that our cases require. The DOC afforded Simmons with access to the disciplinary code upon his admission into custody, the right to appeal any adverse disciplinary hearing findings to the prison superintendent, and the constitutional rights attendant to a criminal proceeding.
For the aforementioned reasons, and as stated in the Court of Appeals, Division Two opinion, these procedural safeguards are more than sufficient to satisfy the requirements of Mathews. The process by which the DOC adopted its rules, evidenced by the safeguards discussed above, minimized any *793 risk of an intrusion by the government into Simmons' interests. As mentioned, the DOC's rule making process provided for public scrutiny and judicial review. Thus, we hold that RCW 9.94.070 provides adequate procedural safeguards against arbitrary administrative action and abuse of discretion and does not unconstitutionally delegate legislative authority to the DOC.

Equal Protection
Equal protection requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. U.S. Const. amend. XIV, § 1; Wash. Const. art. I, § 12. Equal protection is not intended to provide complete equality among individuals or classes but equal application of the laws. A party challenging the application of a law as violating equal protection principles has the burden of showing that the law is irrelevant to maintaining a state objective or that it creates an arbitrary classification. Simmons has not met this burden.
Simmons concedes that RCW 9.94.070 has the legitimate state objective of maintaining prison security. He argues, rather, that the statute creates an arbitrary classification between inmates because it applies to inmates differently, depending on their sentences and the amount of earned early release credits available to them. Simmons claims that the statute allows inmates with longer prison terms, and more potential early release time, to accumulate more serious infractions before being subject to criminal liability.[8]
RCW 9.94.070 is designed to identify inmates who have lost all potential earned early release time through the commission of serious infractions. The statute does not create an arbitrary classification between inmates. In fact, no case law exists which distinguishes between classes of inmates based on the length of sentence being served for purposes of an equal protection analysis. We find no basis to make such a distinction here.
We hold that RCW 9.94.070 satisfies the State's objective of maintaining prison security and does not violate principles of equal protection.
We affirm the Court of Appeals.
IRELAND, BRIDGE, OWENS and FAIRHURST, JJ., concur.
ALEXANDER, C.J. (dissenting).
By failing to set forth adequate procedural safeguards to assure that the Department of Corrections (DOC) will reasonably define what conduct is criminal, the legislature has unconstitutionally delegated its legislative authority. "The determination of crime[] and punishment is a legislative function." State v. Ermert, 94 Wash.2d 839, 847, 621 P.2d 121 (1980). Although the legislature may delegate its legislative authority, it remains subject to the separation of powers doctrine. State ex rel. Schillberg v. Cascade Dist. Ct., 94 Wash.2d 772, 781, 621 P.2d 115 (1980) (holding that "[t]he separation of powers principle requires that the delegation of legislative power to the executive be accomplished along with standards which guide and restrain the exercise of the delegated authority"). The separation of powers doctrine is not violated "if the Legislature defines generally what is to be done, which administrative body is to accomplish the specified purposes, and what procedural safeguards are in effect to control arbitrary administrative action." Diversified Inv. P'ship v. Dep't of Soc. & Health Servs., 113 Wash.2d 19, 25, 775 P.2d 947 (1989) (emphasis added). Here, the legislature has defined what is to be done and who is to do it. I dissent, however, because the legislature has failed to provide constitutionally sufficient procedural safeguards.[1]
*794 When determining whether the legislature has established sufficient procedural safeguards, we have stated that "it is imperative to consider the magnitude of the interests which are affected by the legislative grant of authority." In re Pers. Restraint of Powell, 92 Wash.2d 882, 892, 602 P.2d 711 (1979). Indeed, "`the desideratum should be safeguards proportionate to the grant; the larger the grant, the greater the safeguards required.'" Id. (quoting City of Amsterdam v. Helsby, 37 N.Y.2d 19, 36, 332 N.E.2d 290, 371 N.Y.S.2d 404 (1975) (Fuchsberg, J., concurring)).
The majority relies on State v. Crown Zellerbach Corp., 92 Wash.2d 894, 602 P.2d 1172 (1979) where we upheld a delegation of legislative power to the departments of fisheries and game. There, the agency was authorized to impose conditions on permits for hydraulic projects, which if violated could result in a gross misdemeanor conviction. Id. at 898, 902, 602 P.2d 1172. We upheld that delegation because the legislature required the agency to abide by the Administrative Procedure Act (APA), chapter 34.05 RCW, when exercising its power. Id. at 901, 602 P.2d 1172. Although the permit requirements at issue in Crown Zellerbach were not formally promulgated as regulations under the Washington Administrative Code, the agency was completely subject to the APA. Thus, in accordance with the APA, an individual contesting the agency's action could seek review through the agency and the courts. See RCW 34.05.413 (providing for administrative review); RCW 34.05.570 (providing for judicial review).
Unlike the agency in Crown Zellerbach, the legislature has expressly exempted the DOC from the APA. RCW 34.05.030(1)(c). At the same time, it has granted the DOC the ability to define what acts will constitute a felony; a delegation of greater power than was the case in Crown Zellerbach, where only a gross misdemeanor could result.
The focus of our inquiry should be on the procedural safeguards placed on the DOC by the legislature. The majority cites RCW 9.94.070 and RCW 72.09.130, which it contends provide sufficient public scrutiny and judicial review. Majority at 791. RCW 9.94.070(2) states, in relevant part, that "`[s]erious infraction' means misconduct that has been designated as a serious infraction by department of corrections rules adopted under RCW 72.09.130." The only applicable language in RCW 72.09.130 provides that:
(1) The department shall adopt, by rule, a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges....
(2) Earned early release days shall be recommended by the department as a reward for accomplishment. The system shall be fair, measurable, and understandable to offenders, staff, and the public....
(3) The department shall provide each offender in its custody a written description of the system created under this section.
While these statutes empower the DOC to define a "serious infraction," they do not, as the majority asserts, establish a process "to examine the action by the DOC before it adopts specific rules or institutes any criminal proceeding." Majority at 792. Indeed, these statutes do not contain any procedural safeguards.
The majority also concludes that there are adequate procedural checks because the DOC voluntarily adopted procedures similar to the APA that it uses when determining what infractions are "serious infractions." Majority at 792. However, as I have observed, the focus of the inquiry is on the safeguards placed on the DOC by the legislature. While the DOC's own policies are noteworthy, they will not solely cure a violation of the doctrine of separation of powers because the legislature must retain adequate control over the DOC, not merely hope the DOC will control itself. The legislature cannot simply give away the legislative authority to define criminal conduct, authority which is granted to it by the Washington Constitution. See Brower v. State, 137 Wash.2d 44, 54, 969 P.2d 42 (1998) (stating "[t]he legislative authority of the State is vested in the Legislature, art. II, § 1, and it is unconstitutional for the Legislature to abdicate or transfer its legislative function to others").
*795 The legislature, in sum, cannot have it both ways. It cannot exempt the DOC from the APA because it wants the agency free to react quickly to prison disturbances and grant the agency the far reaching power to define what conduct constitutes a felony.[2] There may be situations where the legislature need not control an agency receiving delegated authority through the APA. However, in my view, when the gravity of the interests affected by the grant of power is as great as it is here, the legislature must, at a minimum, place the agency under some procedural requirements. In this instance, the legislature has not supplied any procedural safeguards and, consequently, I cannot join the majority opinion.
SANDERS, CHAMBERS and MADSEN, JJ., concur.
NOTES
[1] State v. Simmons, 117 Wash.App. 682, 684, 73 P.3d 380 (2003).
[2] Simmons' misbehavior includes assaulting staff, throwing feces on staff, exposing himself to staff, spitting on staff, and throwing medication at staff. Simmons also flooded his cell with toilet water, broke his cell window, possessed drugs, mutilated himself, and threatened others. Clerk's Papers (CP) at 26; CP at 29-36; CP at 46-47.
[3] Simmons damaged a fire sprinkler in his cell, causing it to flood. He was charged with the serious infraction of "flooding a cell or other area of the institution" in violation of WAC 137-28-260(720).
[4] This provision is used as an enabling statute for WAC 137-28-260, which is a list of serious infractions.
[5] In 1998, the DOC complied with RCW 9.94.070 by repromulgating its disciplinary code under the authority of RCW 72.09.130.
[6] If Simmons had not stipulated to the fact that he committed a serious infraction in violation of WAC 137-28-260(720), the State would have been required to prove every element of the statute beyond a reasonable doubt at trial. Specifically, the State would have to show that (1) Simmons was an inmate of a correctional institution; (2) Simmons was serving a sentence for an offense committed on or after August 1, 1995; and (3) Simmons knowingly committed a serious infraction, which did not constitute a class A or class B felony, after losing all potential earned early release time credit.
[7] Although the DOC is exempt from the APA rule making requirements, the agency's repromulgation of its rules in accordance with the APA is evidence of additional safeguards.
[8] He also argues that RCW 9.94.070 does not deter further serious infractions by inmates serving life sentences without the possibility of early release but in his argument, does not explain how that impacts him for equal protection purposes.
[1] Because RCW 9.94.070 violates the separation of powers doctrine, I do not reach Simmons' equal protection argument.
[2] It is not as if the DOC is without a remedy for prison misconduct. In this instance, the alleged behavior included, in part, throwing feces on staff members, destruction of DOC property, and drug possession. See majority at ___ nn. 2-3. These actions would constitute any number of felonies such as malicious mischief in the second degree, RCW 9A.48.080, or assault in the third degree, RCW 9A.36.031. Instead of relying on these crimes, the legislature has unconstitutionally authorized the DOC to create new crimes.