[No. 23041-4-III.  Division Three.  November 8, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL ALFRED POSEY, JR., *Appellant*.

*Stephanie C. Cunningham*, for appellant.

*Ronald S. Zirkle, Prosecuting Attorney*, and *Kenneth L. Ramm, Jr., Deputy*, for respondent.

¶1 SWEENEY, A.C.J. — This appeal follows convictions for rape in adult criminal court. The problem is the defendant is (or was) a minor when these crimes were committed and when he was convicted. And he was charged but acquitted of the crime (first degree assault) that required the juvenile court to automatically decline juvenile jurisdiction. He challenges the automatic decline on a number of grounds, including violations of his constitutional rights to equal protection and due process of law. We conclude, however, that the automatic decline statute affords equal protection of law if the class to be protected is all juveniles charged with a "serious violent offense." *State v. Handley*, 115 Wn.2d 275, 289-92, 796 P.2d 1266 (1990). And the Supreme Court has already held that the statute does not deny due process of law. *In re Boot*, 130 Wn.2d 553, 570-71, 925 P.2d 964 (1996). We also conclude that the court did not abuse its discretion by refusing to admit evidence of an e-mail suggesting that the victim here would have consented to violence and rape. We therefore affirm the conviction.

## FACTS

¶2 Daniel Alfred Posey, Jr., and H.A.H. were high school students and classmates. They became involved romantically and sexually. H.A.H. tried to end the relationship. Mr. Posey refused and forced H.A.H. to have sexual intercourse twice. The State alleged he threatened her with a gun.

¶3 Police arrested Mr. Posey and the State charged him with three counts of second degree rape—domestic violence, and one count of first degree assault—domestic violence, with a firearm. Mr. Posey was 16 years old when he committed these crimes and when the State charged him with these crimes.

¶4 Police made copies of e-mails on H.A.H.'s computer. Mr. Posey tried to admit one particular e-mail at trial. H.A.H. wrote the e-mail prior to or around the same time that she met Mr. Posey. This very explicit e-mail mentioned "her [H.A.H.] being raped and how much she would enjoy that." Report of Proceedings (Jan. 12, 2004) (RP) at 52. It also mentioned her "wanting to have the perfect boyfriend to choke her, do all sorts of things and then beat her harder[,] [a]nd if he chokes her that she will just love him more." RP at 52. Mr. Posey wanted to show that H.A.H. consented to the violence and the sexual intercourse and rebut her showing that she was afraid of him. The court refused the offer citing the rape shield statute.

¶5 Mr. Posey was tried in the adult criminal court by a jury. The jury found him guilty of two counts of second degree rape—domestic violence. Significantly for this appeal, the jury did not find him guilty of first degree assault—domestic violence (the crime prompting the automatic decline), or the third count of second degree rape—domestic violence. The adult criminal court sentenced Mr. Posey to a life sentence with a minimum term of 119 months.

## DISCUSSION

### Adult Criminal Court Jurisdiction

¶6 Mr. Posey argues that the automatic decline provision in former RCW 13.04.030(1)(e)(v) (2000) "hinges on the nature of the charges for which the juvenile is to be held accountable." Appellant's Br. at 20. And here, the charge Mr. Posey was held accountable for (second degree rape)

was not the crime which prompted the decline of juvenile jurisdiction (first degree assault).

¶7 The State responds by noting the language of the automatic decline statute. The statute uses the words "alleged" offense. Resp't's Br. at 13. From this the State argues that it is not the *conviction* that dictates adult court jurisdiction but the *charge*.

¶8 We must interpret a statute and apply constitutional rights. Our review is then de novo. *State v. Salavea*, 151 Wn.2d 133, 140, 86 P.3d 125 (2004); *State v. Manro*, 125 Wn. App. 165, 170, 104 P.3d 708, *review denied*, 155 Wn.2d 1010 (2005).

¶9 Washington's juvenile courts are generally vested with exclusive original jurisdiction over juvenile defendants. RCW 13.04.030(1). Jurisdiction over a juvenile defendant transfers to adult court in one of two ways: following a hearing and findings (RCW 13.40.110) or automatically following certain charges (former RCW 13.04.030-(1)(e)(v) (2000)). *State v. Mora*, 138 Wn.2d 43, 49, 977 P.2d 564 (1999). "Serious violent offenses" require automatic decline of juvenile jurisdiction. Former RCW 13-.04.030(1)(e)(v)(A). And serious violent offenses include first degree assault. Former RCW 9.94A.030(37)(v) (2002).

¶10 We determine legislative intent by starting with the language of the statute. *Salavea*, 151 Wn.2d at 142. We derive the legislature's intent from the plain language of the statute if the statute is clear. *Id.*; *Boot*, 130 Wn.2d at 565. This is because the legislature is presumed to " 'mean[ ] exactly what it says.' " *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 964, 977 P.2d 554 (1999)). A statute is clear on its face if there is only one reasonable interpretation. *State v. Beaver*, 148 Wn.2d 338, 345, 60 P.3d 586 (2002).

¶11 The statute here says:

> Except as provided in this section, the juvenile courts in this state shall have exclusive original jurisdiction over all proceedings:

. . . .

(e) Relating to juveniles *alleged* or *found to have committed* offenses, traffic or civil infractions, or violations as provided in RCW 13.40.020 through 13.40.230, *unless*:

. . . .

(v) The juvenile is sixteen or seventeen years old and the *alleged offense* is:

(A) A serious violent offense as defined in RCW 9.94A.030;

. . . .

*In such a case the adult criminal court shall have exclusive original jurisdiction.*

Former RCW 13.04.030(1)(e)(v)(A) (emphasis added). The statute is then clear. *Boot*, 130 Wn.2d at 565; *Salavea*, 151 Wn.2d at 142-43; *Manro*, 125 Wn. App. at 173-74. The juvenile court loses jurisdiction over 16- or 17-year-old juveniles when a serious violent offense is "alleged." Former RCW 13.04.030(1)(e)(v)(A). It is then the nature of the charge that dictates jurisdiction, not the final outcome. *Boot*, 130 Wn.2d at 562-63, 575; *Manro*, 125 Wn. App. at 174. The statute also provides that the "adult criminal court shall have *exclusive* original jurisdiction" where a juvenile defendant is alleged to have committed an enumerated offense. Former RCW 13.04.030(1)(e)(v)(E) (emphasis added). And it does not provide for transfer back to juvenile court if the defendant is acquitted of the charge prompting the automatic decline. A "juvenile" is "any individual who is under the chronological age of eighteen years *and* who has not been previously transferred to adult court pursuant to RCW 13.40.110 *or who is otherwise under adult court jurisdiction.*" RCW 13.40.020(14) (emphasis added); RCW 13.04.011(2).

¶12 The legislature amended this definition to include the phrase "or who is otherwise under adult court jurisdiction" in 1994. *Boot*, 130 Wn.2d at 565; *Mora*, 138 Wn.2d at 51. This is the same year the legislature enacted the automatic decline provisions. *Boot*, 130 Wn.2d at 560-62; *Mora*, 138 Wn.2d at 51. And our Supreme Court held that a

defendant in adult court following a statutorily mandated automatic declination is " 'otherwise under adult court jurisdiction.' " *Boot*, 130 Wn.2d at 563 (quoting RCW 13-.40.020(14)). The defendant no longer falls within the definition of a "juvenile" for juvenile court jurisdiction. *Id.* The adult criminal court is vested with exclusive jurisdiction over all pending charges. *Salavea*, 151 Wn.2d at 141 n.3; *Mora*, 138 Wn.2d at 52; *Boot*, 130 Wn.2d at 562-65, 575.

¶13 Mr. Posey was transferred to the adult criminal court based on the charge of first degree assault. He was then "otherwise under adult court jurisdiction." RCW 13-.40.020(14).

¶14 All charges were then properly in adult court; he no longer fell within the statutory definition of a juvenile. *Salavea*, 151 Wn.2d at 141 n.3; *Mora*, 138 Wn.2d at 52; *Boot*, 130 Wn.2d at 562-65, 575; *Manro*, 125 Wn. App. at 173-74. In sum, the charge confers jurisdiction, not the conviction. *Salavea*, 151 Wn.2d at 141 n.3; *Mora*, 138 Wn.2d at 52; *Boot*, 130 Wn.2d at 562-65, 575; *Manro*, 125 Wn. App. at 173-74.

AUTOMATIC DECLINE PROVISION—CONSTITUTIONALITY

¶15 Mr. Posey argues that the automatic decline provision in former RCW 13.04.030(1)(e)(v)(A) violates his rights to equal protection and due process of law. Equal protection requires that defendants similarly situated receive like treatment. *State v. Simmons*, 152 Wn.2d 450, 458, 98 P.3d 789 (2004); *Handley*, 115 Wn.2d at 289. Mr. Posey points out that other juveniles convicted of these same crimes (second degree rape) wind up being sentenced in juvenile court. And, he argues, this is inconsistent with the legislative purpose of the decline statute which is to punish juveniles more severely who have *committed* serious violent offenses.

¶16 The State responds that equal protection requires only that the law apply equally to persons "similarly situated." And Mr. Posey is not "similarly situated" with other juveniles convicted of these same crimes because he

was charged with first degree assault with a firearm in addition to second degree rape.

¶17 Our review of these constitutional challenges is de novo. *State v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). And we will interpret a statute to be constitutional if possible. *Manro*, 125 Wn. App. at 173. So a party who raises a constitutional challenge must prove beyond a reasonable doubt[1] that it is unconstitutional. *State v. Ward*, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994).

*Equal Protection*

¶18 "Equal protection requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." *Simmons*, 152 Wn.2d at 458. But this does not guarantee criminal defendants complete equality. *Id.* It instead guarantees that the law will be applied equally to persons "similarly situated." *Handley*, 115 Wn.2d at 289; *Manro*, 125 Wn. App. at 175; *State v. Rushing*, 77 Wn. App. 356, 359, 890 P.2d 1077 (1995). The challenger must then show that he is "similarly situated" with other persons who have received different treatment. *Handley*, 115 Wn.2d at 289-90; *Manro*, 125 Wn. App. at 175; *Rushing*, 77 Wn. App. at 359. "Similarly situated" means "near identical participation in the same set of criminal circumstances." *Handley*, 115 Wn.2d at 290; *Rushing*, 77 Wn. App. at 359-60. But by defining the class that is entitled to the equal protection, we (the courts) effectively dictate whether the constitutional right to equal protection has been violated. *See Simmons*, 152 Wn.2d at 458. This case is illustrative. If the class is all juveniles charged with serious violent offenses, then Mr. Posey's right to equal protection of law has not been violated. *Handley*, 115 Wn.2d at 290-92. If, on the other hand, the class is looked at as all juveniles convicted of what we will call "non-enumerated" offenses (those not requiring automatic declination), then

---

[1] The cases use the factual burden of proof "beyond a reasonable doubt." *State v. Ward*, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994). But that really is not very helpful since we are not deciding facts. It is nonetheless the rule.

his right to equal protection may well have been violated. It bears noting that in the first illustration the executive (through the prosecutor) is making the jurisdiction selection and in the second, the court (by way of a fact finder) makes the decision. *See* former RCW 13.04.030(1)(e)(v).

¶19 Here, the legislative preference appears clear from the statute, as we have already noted. *See* discussion *supra* pp. 267-69. And given that express preference, the showing of an unconstitutional application here must be compelling. We have noted that defining the class dictates the result. So the question is, then, why cannot the legislature fix the class as all those *charged* with serious violent offenses? Given the heavy burden on Mr. Posey when challenging the constitutionality of this statute as applied to him, we can find no reason why it cannot. *State v. Ward*, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994).

¶20 The State charged Mr. Posey with a serious violent offense. This gave the adult court automatic and exclusive original jurisdiction over the case. Former RCW 13.04-.030(1)(e)(v)(A); former RCW 9.94A.030(37)(v); Clerk's Papers (CP) at 84-87. Mr. Posey asks this court to determine whether he was similarly situated with other juveniles tried in the juvenile court, based on his convictions rather than the crimes charged. Appellant's Br. at 27-28. And that is certainly a reasonable argument. But given the wording of the statute, prior case law, and the heavy burden on Mr. Posey, it is an argument we reject.

¶21 We look then at the beginning of the process to determine whether Mr. Posey was similarly situated with other juvenile offenders tried in juvenile court. *Handley*, 115 Wn.2d at 290-92; *Rushing*, 77 Wn. App. at 359. His charge, first degree assault with a firearm, follows a different set of facts from other juveniles charged only with second degree rape. Mr. Posey was not, then, similarly situated with other juveniles charged only with second degree rape. *Handley*, 115 Wn.2d at 290-92; *Rushing*, 77 Wn. App. at 359. And Mr. Posey did not engage in "near identical participation in the same set of criminal circum-

stances." *Handley*, 115 Wn.2d at 290; *Rushing*, 77 Wn. App. at 359-60; CP at 84-87. He was in a class of persons alleged to have committed a serious violent offense. *Handley*, 115 Wn.2d at 291-92; *Rushing*, 77 Wn. App. at 359; CP at 84-87. And he was treated the same as all juveniles charged with a serious violent offense.

*Due Process*

¶22 Mr. Posey next argues that he was denied due process of law because he was denied a declination hearing.

¶23 Due process guarantees that "[n]o person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. I, § 3; U.S. CONST. amend. XIV; *In re Det. of Albrecht*, 147 Wn.2d 1, 7, 51 P.3d 73 (2002). It requires that citizens be granted a hearing "at a meaningful time and in a meaningful manner" before they are deprived of a protected interest. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965); *City of Redmond v. Moore*, 151 Wn.2d 664, 670, 91 P.3d 875 (2004). Due process of law protects citizens from fundamentally unfair treatment caused by an "arbitrary exercise of government powers." *In re Det. of Ross*, 114 Wn. App. 113, 121, 56 P.3d 602 (2002); *State v. Cater's Motor Freight Sys., Inc.*, 27 Wn.2d 661, 667, 179 P.2d 496 (1947).

¶24 Due process generally entitles a juvenile to a decline hearing before an adult court exercises jurisdiction. *Boot*, 130 Wn.2d at 561-63. But a juvenile does not have a "right" to a decline hearing in every case. *Id.* at 570. "Only when the courts have *discretion* by statute to assign juvenile or adult court jurisdiction for a particular juvenile does the right to such a hearing attach." *Id.*

¶25 And the legislature has divested the juvenile court of its discretionary authority when the charge is a serious violent offense. *Salavea*, 151 Wn.2d at 141; *Mora*, 138 Wn.2d at 51. Automatic decline of juvenile jurisdiction follows charges of any of the listed offenses in former RCW 13.04.030(1)(e)(v). *Salavea*, 151 Wn.2d at 140-41; *Boot*, 130 Wn.2d at 565. The adult criminal court then

acquires exclusive jurisdiction over all charges against the defendant. Former RCW 13.04.030(1)(e); *Salavea*, 151 Wn.2d at 141 n.3; *Mora*, 138 Wn.2d at 52; *Boot*, 130 Wn.2d at 562-65, 575.

¶26 The prosecutor's discretion to file charges against a juvenile defendant is not unfettered, however. *Boot*, 130 Wn.2d at 573-74. The prosecutor must have sufficient evidence to prove each element of the crime charged. *Id.* at 574. A juvenile who believes he has been wrongly charged may file a motion to challenge the sufficiency of the State's evidence. *Id.*; *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

¶27 Here, Mr. Posey was charged with first degree assault—domestic violence, with a firearm. CP at 84-87. This is a "serious violent offense." RCW 9.94A .030(37)(a)(v). It is an enumerated crime under the automatic decline statute. Former RCW 13.04.030(1)(e)(v)(A). Mr. Posey was for all purposes under the exclusive jurisdiction then of the adult criminal court. *Salavea*, 151 Wn.2d at 141 n.3; *Mora*, 138 Wn.2d at 52; *Boot*, 130 Wn.2d at 562-65, 575. He does not have a constitutional right to be tried in a juvenile court. *Boot*, 130 Wn.2d at 570-71, 575. And the statute here provides otherwise.

¶28 Mr. Posey shows, then, no "arbitrary exercise of government power[ ]" by the prosecutor's charging decision. *Ross*, 114 Wn. App. at 121; *Cater's Motor Freight Sys.*, 27 Wn.2d at 667. Mr. Posey was not deprived of procedural due process; he was properly tried in adult criminal court. *Boot*, 130 Wn.2d at 570-71.

2005 LEGISLATIVE AMENDMENT—RETROACTIVITY

¶29 The legislature amended the automatic decline statute (RCW 13.04.030) in 2005. The statute now requires that the juvenile be returned to juvenile court if the juvenile is not convicted of the crime requiring declination in the first place. RCW 13.04.030(1)(e)(v)(E)(I), (II). So Mr. Posey is entitled to a remand back to juvenile court if the statute

applies to him. He, of course, argues that the amendment is retroactive: "Retroactive application of the 2005 amendment . . . would insure, as the Legislature intended, that [Mr. Posey] receive the *appropriate* sentence." Appellant's Suppl. Br. at 11.

¶30 The State disagrees. It argues that the legislative history does indicate that the purpose of the amendment is to clarify the current statute. And the amendment contravenes a previous judicial construction of the statute: "[r]etroactive application of this 'clarification' of the statute would give the legislature the ability to overrule the court" and create a separation of powers problem. Resp't's Suppl. Br. at 4. So the State concludes the amendment can be applied only prospectively.

¶31 A legislative amendment generally applies prospectively unless it is shown that "(1) the legislature intended the amendment to apply retroactively, (2) the amendment is curative, or (3) the amendment is remedial." *In re Pers. Restraint of Stewart*, 115 Wn. App. 319, 332, 75 P.3d 521 (2003); *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 460, 832 P.2d 1303 (1992). Moreover, even if a legislative enactment falls within one of these three categories, it may not be applied retroactively if it contravenes a previous judicial construction of the statute. *State v. Dunaway*, 109 Wn.2d 207, 216 n.6, 743 P.2d 1237, 749 P.2d 160 (1987); *State v. Jones*, 110 Wn.2d 74, 82, 750 P.2d 620 (1988); *Stewart*, 115 Wn. App. at 336-37. This includes decisions by either our Supreme Court or the Court of Appeals. *Dunaway*, 109 Wn.2d at 216 n.6; *Jones*, 110 Wn.2d at 82; *Johnson v. Morris*, 87 Wn.2d 922, 925-26, 557 P.2d 1299 (1976); *Stewart*, 115 Wn. App. at 336-37. To allow the legislature to overrule the judiciary would raise separation of powers problems. *Dunaway*, 109 Wn.2d at 216 n.6; *Morris*, 87 Wn.2d at 926.

¶32 The legislature amended former RCW 13-.04.030(1)(e)(v)(E) during the pendency of this appeal. Its effective date is July 24, 2005. The amendment requires that a juvenile be returned to juvenile court for disposition

of the remaining charges if he is acquitted of the charge that prompted the automatic decline. RCW 13.04.030(1)(e)(v)(E)(I), (II).

¶33 The bill clarifies the original statute. S.B. REP. on Substitute H.B. 2061, at 2, 59th Leg., Reg. Sess. (Wash. 2005) (S.B. REP. on SHB 2061); H.B. REP. on Substitute H.B. 2061, at 2-3, 59th Leg., Reg. Sess. (Wash. 2005) (H.B. REP. on SHB 2061). The legislature's response was prompted by the Court of Appeals decision in *State v. Manro*.[2] S.B. REP. on SHB 2061, at 1-2; H.B. REP. on SHB 2061, at 1-3. The court in *Manro* held that a juvenile was not to be transferred back to juvenile court even if he was acquitted of the charge prompting the transfer to adult court. *Manro*, 125 Wn. App. at 174.

¶34 The amendment then contravenes the previous judicial interpretation of the statute (*State v. Manro*) and therefore cannot be applied retroactively.

EVIDENCE—RAPE SHIELD STATUTE

¶35 The trial court refused to admit an e-mail written by H.A.H., citing the rape shield statute. Mr. Posey argues that the e-mail was admissible for purposes other than to show her sexual predisposition, sexual history, credibility, or consent. It was admissible to rebut the State's theory that Mr. Posey was violent and abusive and that the abuse caused H.A.H. to be afraid of Mr. Posey. He mentions that e-mail would have shown that the violence was consensual.

¶36 We review a trial court's decision to exclude evidence for an abuse of discretion. *State v. Hudlow*, 99 Wn.2d 1, 17, 659 P.2d 514 (1983); *State v. Harris*, 97 Wn. App. 865, 869, 989 P.2d 553 (1999). The court abuses its discretion if its decision is based on untenable grounds or is manifestly unreasonable. *Harris*, 97 Wn. App. at 869. "A trial judge, not an appellate court, is in the best position to evaluate the dynamics of a jury trial and therefore the prejudicial effect of a piece of evidence." *Id.*

[2] *State v. Manro*, 125 Wn. App. 165.

■ ¶37 Washington's rape shield statute generally bars evidence of a victim's prior sexual behavior when it is offered to prove the victim's credibility or consent. RCW 9A-.44.020(2), (3). The statute does not, however, bar its use as rebuttal evidence when the State raises the issue of the "victim's past sexual behavior." RCW 9A.44.020(4). Evidence of a victim's prior sexual behavior is also permitted if it is offered for purposes other than to prove credibility or consent. *State v. Carver*, 37 Wn. App. 122, 124, 678 P.2d 842 (1984). Relevant evidence may nonetheless be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." ER 403.

¶38 Mr. Posey relies on the court's decision in *Carver*. The State charged the defendant in *Carver* with one count of indecent liberties and one count of second degree statutory rape. *Carver*, 37 Wn. App. at 123. The defendant tried to admit evidence that the victims had suffered prior sexual abuse by others. *Id.* The evidence was offered only to rebut the inference that the victims would have been unable to describe such acts, because of their age, without having experienced them with the defendant. *Id.* at 123-24. The trial court excluded the evidence under the rape shield statute. *Id.* The Court of Appeals reversed. *Id.* at 124-25. It held that the evidence was admissible for three reasons: (1) it was not evidence of a victim's prior misconduct—it was evidence of prior abuse, (2) consent was not at issue since the victims' ages made it impossible for them to consent, and (3) evidence of prior abuse was not so prejudicial as to "cause the jury to decide the case on an improper emotional basis." *Id.* at 124.

¶39 But *Carver* is distinguishable. The e-mail here described only possible prior sexual misconduct. Unlike the factual pattern in *Carver*, the e-mails here described events in which H.A.H. was an active willing participant, not the passive recipient of abuse. RP at 52. The factual issue here was consent and consent was not an issue in *Carver*.

¶40 The court also appropriately exercised its discretion and concluded that the e-mails were highly prejudicial:

[P]eople might talk about something, but it is very different talking about it then actually doing it. Anybody who's had an e-mail correspondence with anybody knows it's easy to say things during that correspondence that you wouldn't necessarily say to their face.

RP at 56. "[W]e don't know if it ever happened." RP at 60.

¶41 The trial court did not abuse its discretion. The e-mail was of little probative value and it violated the rape shield statute.

¶42 We affirm the conviction.

SCHULTHEIS and BROWN, JJ., concur.

Review granted at 158 Wn.2d 1009 (2006).