# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 87378-4-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| IVAN LOPEZ-GUTIERREZ, | |
| Appellant. | |

COBURN, J. — Ivan Lopez-Gutierrez, a convicted felon, engaged in reckless conduct that caused the death of Samuel Perez Perez[1] and, on the same day, knowingly had a firearm in his possession or control. With interpreter assistance, Lopez-Gutierrez pled guilty to manslaughter in the first degree and unlawful possession of a firearm (UPF) in the second degree and was sentenced to the high end of the standard range that was four months longer than the State's agreed sentencing recommendation.

He requests a resentencing because (1) the "sentencing process"—where interpreters assisted while seven individuals spoke on behalf of the victim and one spoke on behalf of Lopez-Gutierrez—"undermined" his decision to not allocute, eroding his due process rights and indirectly penalized him for relying on interpreter services, (2)

---

[1] Though defense identifies the victim as "Samuel Perez" in its opening brief, the State identifies the victim as Samuel Perez Perez in its briefing, consistent with both the amended information and Lopez-Gutierrez's written statement of guilt in his plea paperwork.

the record does not support the court's finding that he failed to show remorse, and (3) the court developed an inadequate record to evaluate whether defense counsel was deficient for failing to identify and discuss immigration consequences with him. Because Lopez-Gutierrez has not established a basis for relief, we affirm.

FACTS

Ivan Lopez-Gutierrez was born in Mexico in 1982. He later lived in California before moving to Spokane. While living in California, he was convicted of the felony of taking a motor vehicle without the owner's consent.

The State asserted that on August 2, 2021, Lopez-Gutierrez shot and killed Samuel Perez Perez following an altercation at a bar in Spokane.[2] The State charged Lopez-Gutierrez with murder in the second degree and UPF in the second degree. Following competency procedures that eventually resulted in the restoration of Lopez-Gutierrez's competency, the parties agreed to have Lopez-Gutierrez plead guilty to UPF in the second degree and an amended charge of manslaughter in the first degree for an agreed recommended sentence. The parties asked the trial court to impose 110 months for the manslaughter conviction and a concurrent sentence of eight months on the UPF conviction, followed by 36 months of community custody.

The court accepted Lopez-Gutierrez's pleas on the two counts and imposed Lopez-Gutierrez's sentence the same day at a hearing where he was represented by two defense attorneys. Lopez-Gutierrez was assisted by a Spanish interpreter throughout the hearing.[3] See GR 11. Two interpreters took turns assisting Lopez-

---

[2] Lopez-Gutierrez did not agree or stipulate to the facts asserted by the State in the probable cause affidavit or police reports as the factual basis for his guilty pleas.

[3] Lopez-Gutierrez informed the trial court that he could not read or write in English.

Gutierrez, and each confirmed with the trial court that they did not have any issues communicating with Lopez-Gutierrez and that they and Lopez-Gutierrez were able to understand one another. The trial court instructed Lopez-Gutierrez at the beginning of the hearing to let the court and his attorneys know if he had any difficulties with the interpreters and the court would stop and ensure that information was repeated as needed. Lopez-Gutierrez responded, "All right."

Lopez-Gutierrez stipulated to the admission of his prior felony conviction from California to support the UPF charge. Prior to taking Lopez-Gutierrez guilty plea, the trial court confirmed with defense that it had enough time to review the amended complaint with Lopez-Gutierrez with interpreter assistance. Lopez-Gutierrez also confirmed that he went over the amended complaint with his attorneys and with the assistance of an interpreter. The court asked Lopez-Gutierrez:

> THE COURT: And have you been having any difficulty communicating with this interpreter, or either of the interpreters for that matter?
> [Lopez-Gutierrez]: No.
> THE COURT: So you're able to communicate with them without any problems?
> [Lopez-Gutierrez]: Yes.
> THE COURT: And after going over the Amended Information with the use of the interpreter and with your attorneys, did you feel like you understand both of these charges and the elements of both offenses?
> [Lopez-Gutierrez]: Yes.
> THE COURT: And you understand what both of these charges mean?
> [Lopez-Gutierrez]: Yes.

Lopez-Gutierrez told the trial court that he reviewed and understood his statement on plea of guilty with the assistance of his attorneys and interpreter, and that he had sufficient time to discuss his decision to plead guilty on both charges and to review related paperwork with his attorneys with the use of an interpreter. The plea

statement included the following acknowledgment by Lopez-Gutierrez:

> If I am not a citizen of the United States, a plea of guilty to an offense punishable as a crime under state law is grounds for deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States.

At one point, Lopez-Gutierrez answered "No" when the trial court asked if he was "able to utilize the interpreter and ask any questions that you had regarding any of these documents and your decision to enter a guilty plea." But before the trial court took Lopez-Gutierrez's plea statement, it provided additional time for the court interpreter to review the document with him and for Lopez-Gutierrez to ask any questions as needed.

As part of its colloquy with Lopez-Gutierrez about the consequences of his guilty plea the court informed Lopez-Gutierrez:

> The crimes that you're pleading guilty to are both felony offenses. And because your plea[s] will result in felony convictions, this could have immigration consequences for you. If you're not a citizen of the United States, these convictions could be grounds and the basis for your deportation, your readmission into the country could also be prohibited, and you could be prohibited from becoming a legal naturalized citizen in the future. Again, these consequences would apply if you're currently not a citizen of the United States.

Lopez-Guiterrez confirmed he understood. The court also summarized the parties' joint recommendation for sentencing based on the guilty pleas, and asked Lopez-Gutierrez, "do you feel like you understand what the parties are jointly recommending to the court?" Lopez-Gutierrez responded, "Yes." The court asked Lopez-Gutierrez, "And do you understand that the court's not required to follow the recommendation, the court can impose any sentence allowed by law?" Lopez-Gutierrez answered, "Yes."

At the end of the court's colloquy, Lopez-Gutierrez told the court that he understood everything, that he did not have any questions before proceeding, and that

4

he still wanted to plead guilty. The court then inquired with Lopez-Gutierrez again:

>    And before I take your [guilty] plea, I just want to confirm, have you
> had any difficulty communicating or understanding either of the
> interpreters that have been with us today?
> [Lopez-Gutierrez]: No.
> THE COURT: And you still wish to go forward with your guilty plea?
> [Lopez-Gutierrez]: Yes.

Lopez-Guttierez's statement on plea of guilty stated:

>    On or about 8/2/2021, in Spokane County, Washington I engaged in
> reckless conduct which caused the death of Samuel Perez Perez.
>
>    On or about 8/2/2021, I knowingly had a firearm in my possession or
> control while I was in Spokane County, Washington, after having
> previously been convicted of a felony.

After finding that Lopez-Gutierrez made the pleas knowingly, voluntarily, and intelligently, the trial court accepted his pleas. While taking Lopez-Gutierrez's guilty pleas, the court again confirmed with him that he had adequate interpreter assistance for purposes of communicating with his attorneys about his decision to plead guilty.

Multiple individuals appeared at sentencing to speak on behalf of the victim Perez Perez. At least some of the speakers used interpreter assistance. Before the first speaker began, the trial court stated that two interpreters were now concurrently assisting with interpretation and that "throughout the plea and the sentencing [hearing], Mr. Lopez-Gutierrez has had an interpreter seated next to him. If there's a need for communication with his lawyer, that's available."

Several of the victim's family members as well as his partner and the mother of his children expressed their pain and suffering caused by his loss. Perez Perez's three daughters and their mother asked the court for justice. Lopez-Gutierrez's ex-wife spoke on his behalf. After she finished speaking, one of the interpreters informed the court that

they had another appointment, and the court observed that one interpreter remained to assist "and we will make sure we're watching the clock for the need for recesses."

As part of its explanation for the joint sentencing recommendation, defense asserted to the trial court that Lopez-Gutierrez would have a viable self-defense argument and potential defense of diminished capacity if the case had proceeded to trial. "Regardless," defense stated, "Lopez-Guiterrez is taking responsibility for his actions on this night in August of 2021." Defense further attested to the court:

> Your Honor, as I think everyone in this courtroom has recognized today, this is … a completely tragic incident. Both families will live with the pain of this event for the rest of their lives. We are hopeful that Mr. Lopez-Gutierrez's decision to take responsibility will allow everyone to start the healing process and the ability to move forward with their lives.
>
> So we do ask that you follow the joint recommendation today.

The trial court then said to Lopez-Gutierrez:

> [Y]ou have a right to make any statement that you would like the court to consider before the final sentencing decision's made. The law does not require you to make a statement, but you have every right to. Is there anything you'd like to share?
> [Lopez-Gutierrez]: No.

The court deviated from the parties' joint recommendation and imposed the maximum sentence within the standard range of 114 months on the manslaughter conviction based on Lopez-Gutierrez's offender score of 1.[4] The court otherwise followed the recommendation, imposing eight months on the UPF conviction to run concurrent and 36 months of community custody with conditions. The trial court

---

[4] Manslaughter in the first degree is a class A felony, see RCW 9A.32.060(2), and has a seriousness level of 11 under RCW 9.94A.515. Though RCW 9.94A.515 has been amended since Lopez-Gutierrez's judgment and sentence, the amendments are not germane to this opinion. The standard sentencing range is 86 to 114 months for a seriousness level of 11 and offender score of 1. RCW 9.94A.510.

explained its reasoning:

> The court's aware that we're here today based on the loss of a life, Samuel [Perez] Perez. Having heard from Mr. [Perez] Perez's family, it is quite evident how much you loved him and I infer how much he loved you during his life. I see how much pain this loss has caused you all.
>
> I think both lawyers and even some of the speakers today recognize that no decision of this court will ever bring Mr. [Perez] Perez back. But I do hope for everyone involved that this is a starting point for healing. I wish that for Mr. [Perez] Perez's family, and I also wish that for Mr. Lopez-Gutierrez.
> …
> [T]he crime that [Lopez Gutierrez] pled to and is being sentenced for was extremely violent and it resulted in the loss of a life, the loss of a father, friend, spouse, boyfriend, and uncle.
>
> The court notes in assessing and observing Mr. Lopez-Gutierrez that I didn't sense a lot of remorse. The court finds in this case that a high-end sentence is appropriate.
> …
> Mr. Lopez-Gutierrez, I want to wish you luck, sir. I hope that you're able to do good things in your life. I believe … that you likely are a good person but your actions caused permanent harm that will never be repaired. The court notes … there's not been an apology.
> …
> The factors that swayed the court for purposes of sentencing, separate and apart from the statement of the prosecution for purposes of the acceptance of plea, were based on the court's observations in court and hearing the deep pain of Mr. [Perez] Perez's family. For that reason, the court found the high-end recommendation, which I would point out is only four months longer than the joint recommendation. The court's decision, the court finds, is just.

The court noted that it considered the mitigating factors presented by defense, "including cognitive memory issues, the possible self-defense argument, and the possible diminished capacity."

Before entering the final orders, including the felony judgment and sentence, the trial court provided defense with additional time to review the paperwork with Lopez-Gutierrez and the interpreter. Defense subsequently confirmed with the trial court that the orders accurately reflected the trial court's oral rulings.

Lopez-Gutierrez appeals.

DISCUSSION

Lopez-Gutierrez argues that we may review the standard range sentence that the trial court imposed because the court violated his due process and equal protection rights. He claims that the trial court was unconsciously biased against Lopez-Gutierrez based on the prolonged nature of the hearing involving interpreter services and that the court failed to consider cultural factors contributing to Lopez-Gutierrez's limited participation at sentencing.

Generally, a sentence within the standard sentence range under RCW 9.94A.510 of the Sentencing Reform Act (SRA) of 1981, chapter 9.94A RCW, is not appealable. RCW 9.94A.585(1); State v. Osman, 157 Wn.2d 474, 481, 139 P.3d 334 (2006). The sentencing court has discretion to sentence a defendant within the sentence range and where it does so there can be no abuse of discretion as to the length of the sentence. State v. Williams, 149 Wn.2d 143, 146-47, 65 P.3d 1214 (2003). A defendant may only appeal a sentence within the standard range if the sentencing court failed to comply with the SRA's procedural requirements or constitutional requirements. Osman, 157 Wn.2d at 481-82.

Lopez-Gutierrez did not raise his constitutional complaints to the trial court. The State argues that because Lopez-Gutierrez does not show that the trial court committed a manifest constitutional error, his challenge is barred by RAP 2.5(a).

Under RAP 2.5(a), we may refuse to review any claim of error that was not raised below. However, a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). To warrant our review, a party must show that

8

the error is truly of constitutional magnitude and that the asserted error is manifest. State v. Kalebaugh, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). For an error to be manifest, it must have resulted in actual prejudice. State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). Actual prejudice requires the challenging party to make a plausible showing that the purported error had practical and identifiable consequences in the case. Kalebaugh, 183 Wn.2d at 584. "[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." O'Hara, 167 Wn.2d at 100. An error is not manifest if the trial court could not have foreseen the asserted error or where the trial counsel could have been justified in their failure to object. Id. A reviewing court thus determines "whether the error is so obvious on the record that the error warrants appellate review." Id. at 99-100.

"At a minimum, due process 'requires a fair trial in a fair tribunal.'" In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) (internal quotation marks omitted) (quoting Bracy v. Gramley, 520 U.S. 899, 904-05, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997)). An impartial tribunal is one without actual or apparent bias. See State v. Finch, 137 Wn.2d 792, 808, 975 P.2d 967 (1999); State v. Post, 118 Wn.2d 596, 618, 826 P.2d 172 (1992). We presume that trial judges properly discharge their official duties absent bias or prejudice. Davis, 152 Wn.2d at 692. A party seeking to overcome this presumption must point to specific facts in the record showing bias, such as evidence that the judge had a personal interest in the outcome or of the judge's personal prejudice against the party. Id. at 692-93; see also Tatham v. Rogers, 170 Wn. App. 76, 90-91, 283 P.3d 583 (2012) (providing examples of evidence of judicial bias

9

requiring recusal under due process). We will not entertain mere speculation of judicial bias. Tatham, 170 Wn. App. at 96; see also Davis, 152 Wn.2d at 692 ("Judicial rulings alone almost never constitute a valid showing of bias.").

Here, following a hearing at which family members of the victim expressed the pain and suffering caused by his death, the court observed that Lopez-Gutierrez's "extremely violent" killing of the victim resulted in an irreparable loss for which Lopez-Gutierrez exhibited a lack of remorse. The court stated its reasoning for deviating from the parties' joint recommendation was "based on the court's observations in court and hearing the deep pain of Mr. [Perez] Perez's family."

Lopez-Gutierrez's allegations underlying his due process claim are not supported in the record. Nothing in the record indicates that the trial court was frustrated or complained about the length of the hearing, or that the court factored the length of the hearing into its sentencing determination. The only cites to the record that Lopez-Gutierrez provides in his briefing are statements by the prosecutor acknowledging that more individuals wanted to speak on behalf of the victim than the State expected.

Lopez-Gutierrez also does not point to any evidence to support his suggestion that his participation at the hearing was hindered by language barriers or the length of the hearing. The record instead supports that the trial court made repeated efforts to ensure that Lopez-Gutierrez was able to participate in the hearing with interpreter assistance and that he had time to review information with his attorneys and interpreters as needed. Lopez-Gutierrez further mischaracterizes the record when he claims that the trial court "advised" him that "he did not have to speak." The trial court provided Lopez-Gutierrez with an opportunity to provide a statement if he wished, informing him that

while the law did not require him to make a statement, he had "every right to." Lopez-Gutierrez declined. Because Lopez-Gutierrez's due process claim relies on a characterization of the record that is based more on speculation than facts, it does not warrant any further review.

Lopez-Gutierrez's equal protection contention relies on the assertion that a similarly situated English speaker would have had a better sentencing outcome. Equal protection requires that persons who are similarly situated "with respect to the legitimate purpose of the law receive like treatment." State v. Simmons, 152 Wn.2d 450, 458, 98 P.3d 789 (2004) (citing U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 12). "Equal protection is not intended to provide complete equality among individuals or classes but equal application of the laws." Id. A defendant must first show that they received disparate treatment because of their membership in a class of similarly situated individuals and then that such disparate treatment was the result of intentional discrimination. Osman, 157 Wn.2d at 484. The classification determines the standard of review[5] that is applied to the challenged government action. Id.

Again, Lopez-Gutierrez's underlying factual assertions are not supported in the record. We reject Lopez-Gutierrez's assertion that the trial court's finding that he "failed to show remorse and refused to apologize were not supported by the record." In addition to the record supporting the court's finding that Lopez-Gutierrez did not

---

[5] These include from least to most discretionary: (1) strict scrutiny if the challenging party is a member of a suspect class or the challenged government action threatens a fundamental right, (2) intermediate scrutiny if the challenging party is a member of a semisuspect class or the challenged government action threatens an important right, and (3) rational basis review if the challenging party is not a member of a suspect or semisuspect class and the government action does not threaten a fundamental or important right. Osman, 157 Wn.2d at 484; State v. Schaaf, 109 Wn.2d 1, 17-18, 743 P.2d 240 (1987); State v. Shawn P., 122 Wn.2d 553, 560, 859 P.2d 1220 (1993).

apologize, we defer to the trial court's direct observations of Lopez-Gutierrez that contributed to its finding that he did not show "a lot of remorse" at the hearing. See State v. Lindahl, 114 Wn. App. 1, 18-19, 56 P.3d 589 (2002) ("[W]e defer to the trial court on the issue of [the defendant's] credibility during the plea and sentencing hearings."); State v. Mail, 121 Wn.2d 707, 711-12, 854 P.2d 1042 (1993) (stating that defendants who receive a standard range sentence must object to allegedly unproven assertions of fact used at sentencing to preserve error under the real facts doctrine).

Lopez-Gutierrez also makes a winding argument that if his hearing was not elongated by interpreter assistance he may have apologized, which would have led to a lesser sentence. Lopez-Gutierrez was given an opportunity to speak at his sentencing. Nothing in the record supports his suggestion that the length of the sentencing hearing prevented him from apologizing if he had wished to do so. Lopez-Gutierrez's equal protection claim is without merit.

We affirm.[6]

_____
Coburn, J.

WE CONCUR:

_____
Díaz, J.

_____
Smith, J.

---

[6] We decline Lopez-Gutierrez's request to remand his case for an evidentiary hearing to determine whether his counsel committed ineffective assistance of counsel by not adequately informing him of immigration consequences related to his guilty plea. We cannot consider matters outside the record on a direct appeal. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). If Lopez-Gutierrez "wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." Id.