[No. 17046-2-III.    Division Three.    November 18, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS JAMES HARRIS, *Appellant*.

*Donald G. Miller,* for appellant.

*Steven Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for respondent.

SWEENEY, J. — One accused of a crime has the right to present all admissible evidence in his/her defense. Generally evidence is admissible if it is relevant. And evidence is relevant if it has "any tendency to make the existence of any fact . . . of consequence . . . more . . . or less probable[.]" ER 401; *State v. Clark,* 78 Wn. App. 471, 477, 898 P.2d 854 (1995). In this third degree rape prosecution, Thomas Harris tried to introduce evidence that the fetus being carried by the obviously pregnant prosecuting witness was not his. The court refused the offer, concluding that it would violate the rape shield statute and the pregnancy was not unduly prejudicial. The question here is whether the trial judge abused his discretion by refusing to allow evidence of Mr. Harris's nonpaternity and, further, whether any error would be harmless. We conclude that the trial judge did not abuse his discretion by refusing to admit evidence of nonpaternity, and affirm.

## FACTS

Fifteen-year-old M.T. spent the night with a neighbor and friend, Kathy Harris. Kathy's brother, Thomas Harris, came home between 11:00 P.M. and midnight. All three watched television in Mr. Harris's room. Kathy left the

room. While M.T. sat on Mr. Harris's bed, he pushed her down, removed her pants and had intercourse with her. She testified that he ignored her objections. And she physically resisted. Mr. Harris testified that M.T. cooperated in removing her clothes and only later objected. He said he stopped twice while they talked about her objections. And eventually she capitulated. Both M.T. and Mr. Harris testified that she tried to keep him from undoing her belt buckle. Mr. Harris also conceded that M.T. said: "I don't want to" or "I can't." His version of events was that the second time she said this he stopped and partially dressed.

Detective Michael Heinen testified that Mr. Harris admitted to him that he had intercourse with M.T. after she said no. Detective Charles Reisenauer testified that Mr. Harris said the same thing to him.

Both M.T. and Mr. Harris testified that, as she left the room, Mr. Harris said something like:

"What are you going to tell your Daddy, I raped you?"

"Are you going to tell your father that I raped you or what?"

"And don't go tell your Daddy I raped you."

M.T. did not mention rape to anyone in the Harris family the following morning. The degree of friendliness between M.T. and Mr. Harris the following morning was disputed.

Later that day police picked up M.T. as a runaway. Again, she did not report the incident. A friend of M.T.'s eventually told M.T.'s father who reported the incident to police. Mr. Harris was charged with third degree rape.

Mr. Harris's jury trial started about seven months after the incident. M.T. was then eight months' pregnant, but not with Mr. Harris's child. He moved in limine to ask M.T. about the paternity of the fetus pursuant to RCW 9A.44.020(3) (rape shield statute procedure for introducing evidence of consent). The court denied Mr. Harris's request to introduce information of the paternity because the fact of pregnancy was not unduly prejudicial and evidence that she had had sex with another man would violate the rape shield statute.

Mr. Harris also tried to present testimony of Josie Le-Doux, a friend of M.T.'s. He expected her to testify that M.T. told her that she had been raped by another man on another occasion. M.T. denied making the statement or even having a sexual relationship with the other man. Mr. Harris's counsel justified the introduction of the statement by arguing that "it's impeachment evidence. It goes to her truthfulness." Counsel later added that the State had opened the door by introducing Mr. Harris's statement to M.T., "don't go tell your Daddy I raped you."

The court refused the proffered testimony of Ms. LeDoux on the grounds that the accusation was remote in time, was not made to a law enforcement officer, and could not be proved false. The court found therefore that the evidence would not be helpful and would simply confuse the jury. The court also thought the evidence was impeachment by a prior consistent statement on a collateral matter and therefore not admissible absent proof that it was false. ER 613(b); *State v. Demos*, 94 Wn.2d 733, 736, 619 P.2d 968 (1980).

The jury convicted Mr. Harris of third degree rape. The court sentenced him to the high end of the standard range.

## DISCUSSION

Evidence of Non-Paternity. Mr. Harris first argues that he was denied his Sixth Amendment right to confront witnesses by the court's refusal to allow him to tell the jury he was not the father of the fetus M.T. carried at the time of trial.

■■ The Sixth Amendment to the United States Constitution grants Mr. Harris the right to confront and cross-examine adverse witnesses. *State v. Hudlow*, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983) (citing *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)). But he has the right to present only relevant evidence. *Id.* at 15. This limitation is Mr. Harris's first stumbling block.

To be relevant, evidence must be both material and probative. 1 McCormick on Evidence § 185, at 773 (John W.

Strong ed., 4th ed. 1992). *See also Clark*, 78 Wn. App. at 477 ("[e]vidence is admissible when relevant (i.e., when it has 'any tendency to make the existence of any fact . . . of consequence . . . more . . . or less probable' (ER 401)")). Material means that there is some logical nexus between the evidence and the factual issues the jury must resolve. McCormick, *supra*, at 773. That logical nexus is absent here.

Mr. Harris's defense is consent. He never claimed that he did not have intercourse with M.T; he claimed she agreed. The fact that she was pregnant is therefore logically immaterial. Evidence that he is not the father does not exculpate his criminal responsibility. This analysis does not, however, fully answer Mr. Harris's assignment of error. He argues that he should have been allowed to dispel, or at least mitigate, the prejudicial effect of an obviously pregnant 16-year-old witness—one who claimed Mr. Harris raped her. And this argument raises a more difficult question.

The standard of review is clearly abuse of discretion, and for good reason. *Demos*, 94 Wn.2d at 736; *State v. Mendez*, 29 Wn. App. 610, 611, 630 P.2d 476 (1981). A trial judge, not an appellate court, is in the best position to evaluate the dynamics of a jury trial and therefore the prejudicial effect of a piece of evidence. *See State v. Taylor*, 60 Wn.2d 32, 40, 371 P.2d 617 (1962). Here, the trial judge had to compare the prejudice of an obviously pregnant victim against the introduction of evidence that the victim had intercourse with another man.

This trial judge abused his discretion if the decision to exclude evidence, that Mr. Harris was not the father of the child M.T. was carrying, was based on untenable grounds or was manifestly unreasonable. *State v. Wade*, 138 Wn.2d 460, 464, 979 P.2d 850 (1999).

Mr. Harris's argument necessarily assumes that the jury inferred, without the benefit of evidence, that Mr. Harris was the father of M.T.'s fetus. But the reality is neither he nor we know what particular evidence, or other factors, influenced this particular jury to find this particular defendant guilty. Nor are we entitled to know. *State v. Marks*, 90 Wn. App. 980, 986, 955 P.2d 406, *review denied*, 136 Wn.2d

1024 (1998). The answer to Mr. Harris's concern that M.T.'s obvious pregnancy prejudiced his jury is a definite maybe. We do not know.

Every experienced trial lawyer understands the tension between what logically, and rationally, should influence a jury and what actually does influence it, whether or not logical or rational. The division of authority between trial and appellate courts is designed to address this very tension.

The deferential abuse of discretion standard gives a trial judge wide latitude on a variety of trial questions, including the admission or exclusion of evidence, the wording of instructions, the order and sequence of witnesses, and many other trial related matters. *Marks*, 90 Wn. App. at 984. And that is because the trial judge is in the middle of, and part of, the ongoing drama that is a jury trial. An appellate court, on the other hand, reads a record. Dennis J. Sweeney, *An Analysis of Harmless Error in Washington: A Principled Process*, 31 Gonz. L. Rev. 277, 280 (1995/96). Our role then is appropriately limited to review of questions which can best be characterized as questions of law. *See State v. Lough*, 125 Wn.2d 847, 861, 889 P.2d 487 (1995). Therefore, so long as the trial court's grounds for its decision are reasonable or tenable, they should not be subject to appellate meddling. Only in those instances where the trial court's discretionary decision clearly falls beyond the pale should we reverse. *See id.* at 861.

Here, the trial judge considered the relevancy of M.T.'s pregnancy. It is not relevant. The court considered both the letter and the spirit of the rape shield law. It then concluded, on balance, that evidence M.T. had sexual relations with another man should not be admitted.

The purpose underlying the rape shield law is set out in a memorandum dated March 7, 1975, by the Chairman of the Senate Judiciary Committee to members of the Senate Rules Committee and is helpful here: " 'To make such evidence admissible would simply be to invite the defense to besmirch the character of the victim and to put her on trial instead of the defendant.' " *State v. Kalamarski*, 27 Wn.

App. 787, 792 n.4, 620 P.2d 1017 (1980) (McInturff, J., dissenting).

This trial judge's decision is based on tenable grounds. He did not, therefore, abuse his considerable discretion.

█ Evidence of M.T.'s Prior Accusation of Rape. Again, the determination of relevancy is within the sound discretion of the trial court. *Demos*, 94 Wn.2d at 736; *Mendez*, 29 Wn. App. at 611.

Mr. Harris is correct that only evidence offered to prove credibility or consent is barred by the rape shield statute. Evidence offered to prove anything else is subject only to the general relevancy requirement of ER 403.[1] *State v. Carver*, 37 Wn. App. 122, 124, 678 P.2d 842 (1984).

The court did not, however, rely on the rape shield statute to exclude the prior accusation. It did not even mention the rape shield statute in this context. The court excluded the evidence on general relevancy grounds because:

• the alleged accusation was remote in time, and

• the alleged statement was not an official complaint to police or parents, and

• Mr. Harris did not offer to prove the statement was false, and

• the proposed evidence was impeachment by prior inconsistent statement on a collateral matter.

Report of Proceedings at 74-75.

On its face, the first assignment of error (rape shield) is without merit. But in challenging the nonexistent rape shield ruling, Mr. Harris makes a cogent argument for admissibility on general relevance grounds, whether the alleged prior accusation was proved false or not. And he made the same argument to the trial court.

---

[1]ER 403 provides:

"EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ Generally, evidence that a rape victim has accused others is not relevant and, therefore, not admissible, unless the defendant can demonstrate that the accusation was false. *Demos*, 94 Wn.2d at 736-37. That is because the propensity of the complaining witness to cry "rape" is usually offered to impugn credibility. Mr. Harris conceded that he had no evidence that the prior accusation was false, even if it were made.

Evidence tending to establish a party's theory, or to qualify or disprove the testimony of an adversary, is always relevant and admissible. *Lamborn v. Phillips Pac. Chem. Co.*, 89 Wn.2d 701, 706, 575 P.2d 215 (1978) (citing *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 89, 549 P.2d 483 (1976)). But the court can keep out prior accusation evidence, even if the defendant offers it for a purpose other than attacking credibility, if it has slight probative value that is outweighed by suggesting to the jury some impropriety. *State v. Gallegos*, 65 Wn. App. 230, 237, 828 P.2d 37 (1992). The defendant must demonstrate its relevance. *State v. Peterson*, 35 Wn. App. 481, 484, 667 P.2d 645 (1983). Mr. Harris offered no proof that he knew of the prior statement on the night of the rape, that M.T. denied making it or that it was false.

The State put into evidence Mr. Harris's parting comment to M.T. Mr. Harris did not deny making this remark, which, on its face, tended to prove his guilt. Therefore, the prior accusation evidence was potentially probative. A prior accusation, later recanted, would provide an innocent explanation for the remark and bolster Mr. Harris's version of the events, assuming the jury believed it and Mr. Harris could show that he knew about it at the time.

Mr. Harris's main argument for permitting inquiry about it, however, was to impeach M.T.'s credibility. By telling the trial court that M.T. subsequently withdrew or recanted this prior unrelated accusation, Mr. Harris implied that she admitted making the accusation in the first place. But M.T. did not "withdraw" or "recant" the prior accusation. She utterly denied it. Since M.T. would deny ever having made

the statement, it could be proved only by extrinsic evidence from Ms. LeDoux. It was, therefore, inadmissible under ER 608[2] to impeach M.T.'s general character for truthfulness.

The court was also within its discretion to conclude that Ms. LeDoux's testimony was not relevant for substantive contradiction purposes. The state of mind argument was offered as an afterthought. Mr. Harris made no offer of proof that his remark was an allusion to a known prior accusation. In fact, defense counsel told the court he first learned of the alleged prior accusation from Ms. LeDoux during trial preparation. This would significantly diminish its relevance on the question of Mr. Harris's state of mind.

We affirm the decision of the trial court.

KURTZ, A.C.J., and BROWN, J., concur.

Review denied at 140 Wn.2d 1017 (2000).

---

[2]"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, . . . may not be proved by extrinsic evidence." ER 608(b).