IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30385-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NICOLE MARIE LOPEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Nicole Lopez appeals her conviction of possession of a stolen motor vehicle, which was based on mismatching vehicle identification numbers (VINs) on a Dodge Durango in her possession. The State and Ms. Lopez each had coherent but conflicting accounts of whether the Durango in her possession was one she purchased in 2007 or one that was stolen in 2008. We reject Ms. Lopez's argument that the charges against her should have been dismissed on account of a State failure to preserve evidence and her claim of insufficient evidence to support her conviction. We agree, however, that the trial court committed reversible error when it excluded evidence of a diagnostic test supporting her version of events. We reverse and remand for a new trial.

FACTS AND PROCEDURAL BACKGROUND

There may be no way to present the facts of this case that will not make the reader's head spin. Beginning with the version of events presented by the State might be the clearest.

A.    The State's Version of Events

In October 2008, Raymond Munoz, who lived in Toppenish, reported his 2001 Dodge Durango stolen. His Durango was all black, with a gray interior. Its VIN ended in the numbers 8028. Approximately a week later, Nicole Lopez, who lived in Zillah and owned a 1998 Durango, originally green, reregistered her sport utility vehicle (SUV) as having been repainted black with a red stripe. Her Durango was registered with a VIN ending in 7932.

In January 2009, Yakima County Sheriff's Deputy Steve Changala obtained a search warrant in connection with his investigation of an unrelated stolen vehicle. In the course of the search of a property in Union Gap, he encountered a green Durango that had been stripped of its tires, wheels, and some of its parts. Its license plate was missing and the VIN plate on the dashboard had been removed. The VIN he recorded from the door and the glove box ended in 7932 and was reported by the Department of Licensing (DOL) to be the VIN of a Durango owned by Nicole Lopez. But DOL records indicated that Ms. Lopez's Durango was by then black and red. The deputy did not impound the

2

green Durango, photograph it, or collect any other evidence. He did note in his report that its interior was brown.

A week later, on January 16, 2009, the deputy stopped at the registered address for Ms. Lopez's Durango and spoke with Ms. Lopez, who confirmed that she owned a black and red Durango and told the deputy where it was parked. The deputy obtained a search warrant for the SUV. He would later testify that the VIN plate on the dashboard of the black and red Durango to which he was directed by Ms. Lopez matched the VIN for the SUV registered to her (7932) but that the VIN reflected on the manufacturer's sticker on the door did not; rather, it ended in 8028 and was the VIN for Mr. Munoz's stolen Durango. The deputy would also testify that the VIN plate on the dashboard appeared to him to have been tampered with. Concluding that Ms. Lopez had Mr. Munoz's stolen SUV to which she had attached her dashboard VIN plate and mounted her license plate, he impounded the Durango and had it towed to the Yakima County sheriff's secure lot, known as the "bullpen," to be held as evidence. Report of Proceedings (RP) (Nov. 2, 2011) at 167. In December 2009, Ms. Lopez was charged with possession of a stolen vehicle.

Although the trial court ultimately did not admit evidence of events after the January 16, 2009 date on which the deputy impounded the black and red Durango, we continue with the history of relevant events, including procedural developments, largely from the State's perspective. Evidence of these later events was presented in pretrial hearings and conferences.

Shortly after charges were filed against Ms. Lopez, Deputy Changala was asked by the prosecutor to secure the abandoned green Durango, for evidence. When he returned to the location where he had seen it, it was no longer there. Unbeknownst to the deputy, the green Durango had been found abandoned in a drainage ditch in November 2009 by another officer, who impounded it without any idea it was relevant to a pending criminal investigation. According to Deputy Changala, the day that the green Durango was impounded proved to be the same day that Ms. Lopez transferred title to her Durango to a woman named Stephanie Hawk.

The green Durango recovered from the drainage ditch was evidently released from impound. Nothing in the record indicates the date. Neither pretrial nor trial records contain any documentary evidence of its release. Deputy Changala testified to his belief that it was released by the towing company, John Boys Towing, to Ms. Hawk. He admitted, though, that Ms. Hawk denied knowing anything about the green Durango when he questioned her. He did not identify the source of his belief that the green Durango was released to Ms. Hawk.

Meanwhile, the black and red Durango seized from Ms. Lopez and impounded as evidence was moved at some point from the secure bullpen to an unsecured sheriff's parking lot. It was thereafter inadvertently released in March 2010 to Elite Towing, the company that originally towed it. Since title had by then been transferred to Ms. Hawk, she was notified of her right to recover it, which she did.

Ms. Lopez's lawyer had requested access to the allegedly stolen Durango to have an expert examine it for a VIN that is marked on the engine. In following up on that request for the prosecutor, Deputy Changala learned that the Durango he had seized and impounded as evidence in January 2009 had been released by mistake. Upon learning of the release, Ms. Lopez moved for dismissal of the charges against her, arguing that the State had failed to preserve material exculpatory evidence.

At the hearing on the motion to dismiss, Deputy Changala testified that he had interviewed Ms. Hawk about her retrieval of the Durango from Elite Towing and was told by her that upon recovering the SUV she turned it over to Ms. Lopez's boyfriend, who loaned her money to obtain release of the SUV and was holding it as security until repaid. (Ms. Hawk testified otherwise, as recounted below.) After hearing from the deputy, Ms. Hawk, and other defense witnesses, the trial court denied the motion to dismiss the charges, concluding that the State's release was inadvertent and that Ms. Lopez could have arranged the desired examination through her boyfriend or Ms. Hawk.

In mid-November 2010, Ms. Lopez's lawyer reported to the court that the black and red Durango released to Ms. Hawk had been found. The lawyer was either unable or refused to identify who had it but reported that whoever had it was willing to make the SUV available for inspection, which Ms. Lopez believed would vindicate her. She conceded that the State was entitled to inspect the SUV as well and represented that it might be produced in short order—perhaps that day.

5

Then, as a result of an unrelated disqualification of Ms. Lopez's lawyer, there was a hiatus in proceedings for many months. The next reference in the record to the relocated Durango was by Ms. Lopez's new lawyer, who reported to the court that the relocated SUV had been impounded again by the sheriff's department. He had been unable to arrange its release so that its onboard diagnostics system could be read for the VIN stored in the SUV's onboard computer. The State had reservations about releasing the Durango from the bullpen lest it again be accused of failing to preserve evidence.

Ms. Lopez was granted an order releasing the Durango to a Dodge dealership for a diagnostic test to identify the VIN. Upon completion of the test, the parties agreed that the diagnostic test established that the SUV then in possession of the sheriff's office was Ms. Lopez's Durango, VIN 7932.

The State contended that this Durango revealed to be Ms. Lopez's—now black and red—was actually the green Durango stripped in 2008, later found in a drainage ditch, impounded, and ostensibly released to Ms. Hawk at some unidentified time. The State contended that in an effort to frustrate prosecution, the green Durango had been repainted to replicate the paint job on the SUV earlier stolen from Mr. Munoz.

B.     Ms. Lopez's Version of Events

Ms. Lopez purchased her Durango—then green—from EZ Buy Auto Sales in 2007. The owner of EZ Buy testified that at the time of the sale to Ms. Lopez the SUV,

6

which had been rebuilt, still needed body work and a paint job. Ms. Lopez claimed that she and her boyfriend repainted it black with a red stripe the following year.

Shortly after the SUV was repainted, Mr. Munoz saw it in the parking lot of a Toppenish fast food restaurant and believed it to be his stolen SUV. Mr. Munoz knew who stole his SUV and the thief had no known connection to Ms. Lopez. But Mr. Munoz recognized certain characteristics of Ms. Lopez's Durango and persuaded her to wait while he flagged down a Toppenish patrol officer. With Ms. Lopez's permission, patrol officer Derrick Perez checked the VIN plate on the dashboard and VIN sticker on the door as Mr. Munoz stood waiting. Officer Perez confirmed with DOL that the VIN number on the door was for a Durango belonging to Ms. Lopez. The plate on the dashboard was partially obscured with dust or oil and he was unable to read the full VIN from the plate.

Ms. Lopez's defense theory highlighted inconsistencies and alleged shortcomings in Deputy Changala's reports, including his report that the green Durango he concluded was Ms. Lopez's had a brown interior, while hers was gray. She argued that the State had no proof that the Durango the deputy seized and impounded in January 2009 bore a VIN number ending in 8028 on its door sticker other than the deputy's testimony, and his testimony conflicted with the SUV's examination several months earlier by Officer Perez. She was never able to test the deputy's claim by examining the black and red Durango when it was originally impounded as evidence.

7

Ms. Lopez's version of events, supported in pretrial testimony by Ms. Hawk, was that Ms. Lopez and her boyfriend offered Ms. Hawk title to the Durango while it was being held as evidence because Ms. Lopez needed to get another car and owning two cars would disqualify her from medical coupons. Ms. Hawk accepted title knowing she might never get the SUV. After the black and red Durango was released to her, Ms. Hawk sold it for $5,000 to someone she could identify only as "a Mexican guy." RP (Oct. 15, 2010) at 62. When she learned later that Ms. Lopez needed the Durango for testing in her defense, Ms. Hawk tried but was unable to find the buyer. Ms. Hawk denied that Ms. Lopez's boyfriend loaned her money or that she had turned the Durango over to him. When confronted with a statement she had signed for Deputy Changala identifying Ms. Lopez's boyfriend, parenthetically, as the person who loaned her money to retrieve the SUV, she claimed she was pressured to add the parenthetical identification by the deputy.

Ms. Hawk contradicted the State's representation that the green Durango recovered from a drainage ditch was ever released to her. She testified that she was never contacted by John Boys Towing, never picked up a green Durango from the towing company, and that she told this to Deputy Changala when he questioned her about a green SUV.

Ms. Lopez claimed that the black and red Durango relocated by the sheriff's department in late 2010 or 2011 and still being held as evidence at the time of trial was the same Durango Deputy Changala had seized and impounded as evidence in January

8

2009. She contends that the diagnostic test performed in 2011 proved that the only Durango ever in her possession was the one she purchased from EZ Buy in 2007.

C.     The Trial Court's Exclusion of Post-January 16, 2009 Evidence

Ms. Lopez did not have the opportunity to conduct the diagnostic test until the afternoon of the day that trial was set to commence. The State learned that the results supported Ms. Lopez's ownership of the SUV and conceded that the test was valid. The next trial day, the State moved to exclude the results of the test and, for that matter, to exclude all evidence and argument relating to events after the Durango was seized from Ms. Lopez on January 16, 2009.

The State's reasoning was that with both Durangos outside its custody until the sheriff's department relocated a black and red Durango in late 2010 or 2011, the diagnostic test was not necessarily a test of the Durango it seized in January 2009. The parties had a new dispute: Was the SUV presently in the possession of the sheriff's department the one that Ms. Lopez bought in 2007, repainted in 2008, and that was seized as evidence by Deputy Changala in January 2009, as she maintained? Or was it—as the State maintained—the SUV she abandoned (still green), that was stripped and then encountered by Deputy Changala while investigating other stolen property, that was thereafter retrieved from a drainage ditch and released to Ms. Hawk, after which Ms. Lopez or her boyfriend painted it to match the stolen Munoz vehicle?

9

The trial court heard from both sides on this issue over the first couple of days of trial. It ultimately granted the State's motion, excluding, as irrelevant, evidence and argument about events that occurred after January 16, 2009.

The jury found Ms. Lopez guilty. She appeals.

## ANALYSIS

Ms. Lopez contends on appeal that (1) the State's failure to preserve material, exculpatory evidence violated her constitutional right to due process; (2) the trial court abused its discretion by excluding relevant evidence; (3) the State presented insufficient evidence to establish that the Durango in her possession was stolen; (4) the State failed to prove each of the alternative means presented to the jury; (5) the sentencing court erred in finding Ms. Lopez had the present or future ability to pay costs; and (6) the trial court erred in finding Ms. Lopez "used" a motor vehicle to commit possession of a stolen vehicle when the SUV was the object of the crime.

We reject her first and third assignments of error, which, if established, would entitle her to reversal and dismissal of the charges. We agree with Ms. Lopez's second assignment of error to the exclusion of the diagnostic test and other post-January 2009 evidence and conclude that the error was not harmless. Because we reverse and remand for a new trial, we need not address her remaining assignments of error.

We address Ms. Lopez's two arguments for reversal and dismissal before turning to her argument that the exclusion of evidence requires a new trial.

10

I

Ms. Lopez contends that the State's release of the black and red Durango seized from her home was a failure to preserve materially exculpatory evidence that warranted dismissal of the charges against her.

Under both state and federal constitutions, due process in criminal prosecutions requires fundamental fairness and a meaningful opportunity to present a complete defense. *State v. Wittenbarger*, 124 Wn.2d 467, 474-75, 880 P.2d 517 (1994) (citing *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)). To satisfy due process, the prosecution has a duty to disclose material exculpatory evidence and a related duty to preserve it. *Id.* at 475. The State's failure to preserve evidence that is material and exculpatory violates a defendant's right to due process and requires that the charges against the defendant be dismissed. *Id.*

Evidence is constitutionally material if it "possess[es] an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (citing *Trombetta*, 467 U.S. at 489). "A showing that the evidence *might* have exonerated the defendant is not enough." *Id.*

Key to this assignment of error is whether the Durango, before its inadvertent release, was constitutionally material evidence or merely potentially useful. The State's failure to preserve evidence that is only potentially useful does not violate a defendant's

11

right to due process unless the defendant can show the State acted in bad faith. *Id.* at 477 (citing *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)). "Potentially useful" evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. This difference in treatment between potentially useful evidence and material exculpatory evidence "is rooted in part on a general unwillingness of the courts to 'impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *State v. Johnston*, 143 Wn. App. 1, 12, 177 P.3d 1127 (2007) (alteration in original) (internal quotation marks omitted) (quoting *Wittenbarger*, 124 Wn.2d at 475). Whether the evidence is material and exculpatory is a question of law we review de novo. *State v. Burden*, 104 Wn. App. 507, 512, 17 P.3d 1211 (2001).

Beginning with the second part of the test for constitutional materiality, Ms. Lopez was unable to obtain evidence for testing that was comparable to the Durango before its inadvertent release. There is no better illustration of this than the State's objection to Ms. Lopez's efforts to present the results of the 2011 diagnostic test, which the State discredited based on the compromised chain of custody. No pictures were taken or testing done while the Durango was in the bullpen, so no substitute existed for access to the SUV itself. Lesser evidence was and remains available, as discussed in section III

12

below. But the seized Durango was the only piece of physical evidence that could have decisively corroborated her claim that the seized SUV was her own.

The exculpatory value of the evidence was not apparent to the sheriff's department, though. In light of Deputy Changala's application for a search warrant and report, the sheriff's department reasonably believed that the evidence was inculpatory. While other evidence calls into question the reliability of the deputy's report of the Durango's VIN, one can only speculate whether diagnostic tests taken while the SUV remained in the sheriff's custody would have supported the prosecution or Ms. Lopez. The Durango was only potentially useful evidence.

Ms. Lopez bears the burden, then, of showing that the State acted in bad faith when it released the Durango. The trial court found that the release of the Durango was inadvertent, a finding that Ms. Lopez does not challenge on appeal—reasonably so, since it was supported by substantial evidence. The trial court did not err in refusing to dismiss the charges as a result of the sheriff's inadvertent release of the SUV.

II

Ms. Lopez next argues that her conviction must be reversed due to the State's failure to present sufficient evidence that she ever possessed Mr. Munoz's Durango. It is a dubious argument, since Deputy Changala's testimony alone, if believed by the jury, established that Ms. Lopez's SUV was stripped, abandoned, and still green after she claimed to have painted it black, while the Durango in her possession in January 2009

13

had the VIN for Mr. Munoz's Durango on the manufacturer's sticker on the door. Ms. Lopez nonetheless argues that the evidence is fatally insufficient if the jury would have to "selectively credit and discredit the State's evidence" to find for the State. Br. of Appellant at 36.

Ms. Lopez's argument characterizes evidence that the State never encouraged the jury to believe as "State's evidence." For example, she points to Deputy Changala's report in January 2009 that the green Durango he searched had a brown interior. At trial, however, the deputy explained, and the prosecutor later argued, that the deputy examined the SUV at night, using a flashlight, and could have gotten the interior color wrong. Ms. Lopez argues that Mr. Munoz and Marlin Workman (a DOL inspector) testified inconsistently about the type of interior (leather or cloth) in the Durango with which they were familiar. But from the point of view of the State's theory, the two men were talking about different SUVs.

She finally argues that the jury's verdict required it to disbelieve Officer Perez's testimony that his VIN check validated Ms. Lopez's ownership. We agree. But Officer Perez admitted that he never prepared a report and never called in his ownership check because it was a civil matter—the prosecutor made sure he established those facts in the officer's direct examination. The State suggested to the jury in closing that Deputy Changala's testimony was more reliable generally, because he had prepared reports. It suggested that Mr. Munoz's recognition of his SUV in Ms. Lopez's possession in 2008

14

could be more reliable because he had owned it for two years. As the prosecutor argued, Officer Perez might not have had the right license plate and was possibly wrong about the VIN, but "[w]e'll never know because he didn't have a report to refer to. He had nothing in writing." RP (Nov. 3, 2011) at 337. Although the State called Officer Perez in the prosecution case, it was free to suggest that the officer's recollection was not as reliable as other evidence.[1] *Cf.* ER 607 (supplanting the common law "voucher" rule by providing that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness").

In reviewing a claim of insufficient evidence, we view the evidence in the light most favorable to the State in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Brockob*, 159 Wn.2d 311, 336, 150 P.3d 59 (2006). Credibility determinations are for the fact finder and are not reviewable on appeal. *Id.*

Viewing the evidence in the light most favorable to the State can include crediting evidence selectively if a rational jury could credit it selectively—and particularly if the State asks the jury to credit it selectively. Similarly, accepting the fact finder's credibility

---

[1] By making the strategic choice to call Officer Perez, the prosecutor could establish the facts that arguably made the officer's recollection less reliable than other evidence and demonstrate, as he argued in closing, that the State had "nothing to hide" from the jury. RP (Nov. 3, 2011) at 336.

determination can include accepting its apparent determination that a particular witness is generally credible, even if not good at distinguishing colors with a flashlight at night.

A rational jury could have viewed the evidence in the manner urged by the State. This jury evidently did. Its verdict is supported by substantial evidence.

### III

Ms. Lopez next argues that the trial court's exclusion of evidence of events occurring after January 2009 that bore on the reliability of Deputy Changala's report of the Durangos' VINs denied her constitutional right to present evidence in her defense.

After the diagnostic test revealed the Durango in the State's possession to be Ms. Lopez's, the State moved for an order in limine excluding the test and all other evidence of events occurring after the January 2009 search and seizure. The State argued it was required to prove that Ms. Lopez was in possession of a stolen vehicle on the day the Durango was seized; anything occurring after that day was irrelevant. The trial court agreed, and articulated an additional basis on which to exclude the evidence: because the State conceded that the SUV then in its possession belonged to Ms. Lopez, the diagnostic test addressed an issue that was not in dispute.

The defendant in a criminal case has the constitutional right to present evidence in his or her defense. *State v. Hawkins*, 157 Wn. App. 739, 750, 238 P.3d 1226 (2010) (citing *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010)). The evidence must be relevant; there is no constitutional right to have irrelevant evidence admitted. *State v.*

16

*Lord*, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007). A trial court's decision to exclude evidence will be reversed only where the trial court has abused its discretion. *Id.* A trial court abuses its discretion when its decision is "manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *Id.* at 283-84.

The threshold to admit relevant evidence is very low. *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). "Evidence tending to establish a party's theory, or to qualify or disprove the testimony of an adversary, is always relevant and admissible." *State v. Harris*, 97 Wn. App. 865, 872, 989 P.2d 553 (1999) (citing *Lamborn v. Phillips Pac. Chem. Co.*, 89 Wn.2d 701, 706, 575 P.2d 215 (1978)). If the evidence may have caused the jury to reach a different conclusion, then excluding it would be an abuse of discretion. *State v. Cuthbert*, 154 Wn. App. 318, 341, 225 P.3d 407 (2010).

Ordinarily, evidence of events taking place years after the date a defendant is alleged to have possessed stolen property would be irrelevant. But ordinarily, Ms. Lopez would have had the opportunity to test Deputy Changala's testimony as to the VIN he observed on the door of the seized Durango by arranging for independent examination of the impounded SUV. Under the unique circumstances of this case, the best diagnostic proof of ownership she can offer is of the seized Durango (she contends), tested following its release. The object of the evidence is not to prove postseizure facts, it is to demonstrate, from evidence examined postseizure, that the Durango seized in January 2009 was the Durango owned by Ms. Lopez.

The evidence may well have caused the jury to reach a different conclusion.

To begin with, the exclusion of all post-January 2009 seizure evidence invited the jury to regard Deputy Changala's testimony as to the VIN he observed on seizing the allegedly stolen Durango as implicitly unchallenged. As far as the jury knew, the deputy had placed the stolen SUV "in evidence," presumably available for testing. Some of the last acts to which Deputy Changala testified were that he called a tow truck to impound the locked black and red Durango; the tow truck driver was able to unlock the door so that the deputy could read the VIN on the manufacturer's sticker; it proved to be the VIN ending in 8028 associated with Mr. Munoz's Durango; and the deputy then ran the VIN though DOL, which confirmed that it was, indeed, the VIN for the stolen Munoz SUV.

Critically, the very last act the deputy testified to was that after he confirmed that the VIN was that of the stolen Munoz Durango, "I took the whole vehicle along with the plates and the VIN plate on the dash that didn't belong to it. I took it to our bullpen at the sheriff's office for evidence." RP (Nov. 2, 2011) at 166-67. Ms. Lopez's lawyer would try to score defense points by establishing that the deputy took no photographs of the SUV at that time but the State elicited the deputy's explanation why he did not need photographs: "I took the whole vehicle and put it into our bullpen for evidence." *Id.* at 169. The State debunked defense questioning about why no crime lab work was done when the SUV was seized on the same basis, asking the following questions and getting the following responses from Deputy Changala:

Q. And with the vehicle from January 18th, 2009, the 2001 black Durango, did you ever send that vehicle or any pieces of it, it sounds like, on that day to the crime lab?

A. No.

Q. Why didn't you do that?

A. I had the whole vehicle with all the evidence taken to our bullpen at the sheriff's office for evidence.

Q. Because it's in evidence, that's why you didn't send it to the crime lab?

A. Right.

*Id.* at 201-02. With it having been established that the "whole vehicle" was "in evidence," and no information that the Durango ever left the sheriff's bullpen, a rational jury could (indeed, might well) conclude that it had been available for further examination on Ms. Lopez's behalf. A rational jury might conclude that if the seized Durango did not have the VIN as reported by Deputy Changala, it would have heard about that from Ms. Lopez's lawyer. Understanding that the stolen SUV was "in evidence" and available, the jury might have regarded the effort that Ms. Lopez *did* make to discredit Deputy Changala as halfhearted.

Beyond that unintended but possible implication of excluding evidence of events following the seizure, Ms. Lopez was deprived of evidence that could have affirmatively helped her defense. The trial court correctly concluded that, standing alone, the diagnostic evidence did not help one side or the other because both agreed it was a test of the SUV that Ms. Lopez owned. But Ms. Lopez's foundation for admitting the test result, if believed by the jury, would have revealed the relevance and importance of the

19

result. Although the record is incomplete as to all the evidence that was excluded, it appears Ms. Lopez was prepared to lay a foundation that the Durango relocated and taken into police custody in late 2010 or 2011 was the SUV seized from her possession as stolen and that she could have presented evidence tracing the inadvertently released SUV from the sheriff's department to Elite Towing, to Ms. Hawk, then to a man identified in the record as Mike Hansen, then back to the sheriff, and ultimately to the examiner who determined it to be Ms. Lopez's.

Before a physical object connected with the commission of a crime may be properly admitted into evidence, it must be satisfactorily identified and shown to be in substantially the same condition as when the crime was committed. *State v. Campbell*, 103 Wn.2d 1, 21, 691 P.2d 929 (1984). The proponent need not eliminate every possibility of alteration or substitution. *Id.* A trial court is vested with wide discretion in determining admissibility, *see id.*, but here, by excluding all post-2009 evidence as irrelevant, the trial court never heard the foundational evidence that Ms. Lopez claimed to be able to offer.

The fact that the State bothered to take the Durango into its possession in late 2010 or 2011 and was concerned that release for testing might compromise the chain of custody suggests that the State believed, at least at one point, that it could establish a sufficient foundation to use it as evidence. Minor discrepancies or uncertainty in identifying an object and showing its substantially consistent condition will affect only

20

the weight of evidence, not its admissibility. *Id.* The jury is free to disregard evidence from such an object if it finds that the object was not properly identified or there has been a change in its character. *Id.*

The trial court erred in granting the State's motion to exclude the evidence. In fairness to the trial court, the results of the diagnostic test triggered a tectonic shift in the State's posture toward post-January 2009 evidence; up to that point, the State had planned to offer its own. It is clear from the record that everyone was struggling to comprehend the implications of this transformation of an already complex trial landscape and the arguments were not as well fleshed out in the trial court as they have become on appeal. Nonetheless, Ms. Lopez knew the evidence was important and her objection was sufficiently clear to preserve the error.

The error was not harmless, even under the "overwhelming untainted evidence' test" applied to a similar claim of erroneous exclusion of evidence in *Lord*, 161 Wn.2d at 295. Under this test, if the untainted, admitted evidence is so overwhelming as to necessarily lead to a finding of guilt, the error is harmless. *But cf. id.* at 302 (Sanders, J., dissenting) (an error depriving a defendant of his constitutional right to present evidence relevant to his defense is not harmless unless "'trivial, or formal, or merely academic, and . . . not prejudicial to the substantial rights of the party assigning it, and in no way [affecting] the final outcome of the case'" (quoting *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947))).

21

The State emphasizes that the critical VINs were included in Deputy Changala's reports, which were the product of routine, reliable police work undertaken with no motive to lie. The evidence cannot be fairly characterized as overwhelming, however, where there was viable evidence that conflicted with his routine reports. The diagnostic test would have raised more questions.

The trial court abused its discretion by excluding the diagnostic test and other relevant post-January 2009 evidence. The error was not harmless. We reverse the judgment and sentence and remand for a new trial.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, A.C.J.

WE CONCUR:

Brown, J.

Kulik, J.