FILED
COURT OF APPEALS
DIVISION II

2014 APR -8 AM 8: 53

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　　　　Respondent,<br><br>　v.<br><br>BRYAN VANCE DUNN,<br><br>　　　　　　　　　　　Appellant. | No. 43855-1-II<br><br><br><br>PART PUBLISHED OPINION |

JOHANSON, J. — A jury found Bryan Vance Dunn guilty of one count of residential burglary and three counts of unlawful imprisonment. Dunn argues that (1) the trial court violated his right to a public trial, (2) the information was defective as to the unlawful imprisonment counts, (3) the jury instruction defining knowledge was erroneous, (4) the prosecutor engaged in misconduct during closing argument, (5) the trial court erred by excluding videos taken on a victim's cell phone, and (6) the trial court violated Dunn's right to be present. We address his arguments regarding the right to a public trial in the published portion of this opinion. Dunn's remaining arguments are addressed in the unpublished portion of this opinion. We affirm Dunn's convictions.

FACTS

On May 13, 2012, three minors, J.P., A.P., and M.C., were at J.P. and A.P.'s house.[1] J.P. was 14 at the time; A.P., J.P.'s younger sister, was 11; M.C., a close friend of J.P. and A.P., was 13. Shortly after the girls woke up, someone knocked on the door. A.P. answered the door and a Hispanic man she did not know, later identified as Luciano Cruz, was at the door. A.P. closed the door and went to ask J.P. what to do. J.P. returned to the living room with A.P. and M.C. and saw that Cruz and two white men had entered the house and were sitting on the couch. One of the white men was later identified as Dunn. J.P. repeatedly told the men to leave the house, but they just laughed at her. Cruz told the girls to go get dressed because they were leaving.

After the girls got dressed, Cruz, Dunn, and the third man took the girls to a two-door car. The three girls got into the car's backseat with Cruz. Dunn was driving and the third man sat in the front passenger seat. Dunn drove to a house on St. John's Street where Cruz and the other man got out of the car and went into the house. The three girls remained in the car and spoke to each other in Spanish. When Cruz and the other man returned to the car, Cruz was carrying a plate of food with hot sauce on it. Some hot sauce dripped onto A.P.'s leg, and Cruz wiped it off with his finger and then licked his finger.

Dunn took everyone to a Burgerville drive-thru. Dunn then stopped at a house the girls said was M.C.'s house although it was not M.C.'s house. When the car stopped, Cruz got out; then all three girls got out, jumped a fence, and ran across a field. The girls ran to a video store and they called J.P. and A.P.'s older sister to pick them up. About the same time, J.P. was able

---

[1] We refer to the minor victims by their initials to protect their privacy.

to contact her mother, Anita Carvajal, who immediately returned home. Carvajal and the girls arrived home at approximately the same time and they contacted the police.

Vancouver Police Department officers and detectives responded to Carvajal's home. Detective Julie Carpenter interviewed each girl separately. Then the girls directed the detectives to the St. John's Street house. A few days later, Detective Edward Letarte met A.P. and J.P. at school where both girls identified Dunn as the car's driver. Letarte spoke with each girl separately. After his arrest, Dunn gave a statement to the police.

The State filed a second amended information charging Dunn with one count of residential burglary and three counts of unlawful imprisonment. After a CrR 3.5 hearing, the trial court found that Dunn's statement to police was admissible. Dunn also asked to admit cell phone videos that J.P. had recorded during the incident. The trial court excluded the cell phone videos, ruling that the videos lacked relevance, contained nothing that would be helpful to the jury and that they were relevant only to collateral issues that "would simply distract from the evidence." Report of Proceedings (RP) (Aug. 14, 2012) at 83.

At trial, J.P., A.P., and M.C. testified to the facts related above, although there were some minor discrepancies in their testimony. For example, M.C. and A.P. testified that the girls ran to the video store, then went to M.C.'s house, then went back to the video store so that J.P. and A.P.'s older sister could pick them up. J.P. testified that the girls went to M.C.'s house and then to the video store. The girls' mothers testified that they never gave anyone permission to take their daughters anywhere.

Dunn's statement was played for the jury. In the statement, Dunn said that he had just met Cruz and was doing some work on Cruz's truck. He was driving Cruz because Cruz had been drinking and could not drive. Dunn stated that he picked up the girls from the house and

3

drove them around, first to the St. John's house, then to Burgerville, and then to the house the girls identified as M.C.'s house. However, he believed that Cruz had permission to pick the girls up and take them to M.C.'s house. He did not realize that something was wrong until the girls ran out of the car and across the field.

Jury voir dire was conducted in open court with Dunn present. After the prospective jurors were questioned and the attorneys exercised their challenges for cause, the trial court invited counsel to exercise peremptory challenges and to finalize jury selection at the clerk's station. The jury found Dunn guilty of one count of residential burglary and three counts of unlawful imprisonment. Dunn appeals.

## ANALYSIS

Dunn argues that the trial court violated his right to a public trial and his right to be present by allowing the attorneys to exercise peremptory challenges during a side bar. Following Division Three's opinion in *State v. Love*, 176 Wn. App. 911, 309 P.3d 1209 (2013), we hold that the trial court did not violate Dunn's right to a public trial by allowing the attorneys to exercise peremptory challenges during a side bar.

### PUBLIC TRIAL RIGHT

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). We review alleged violations of the public trial right de novo. *Wise*, 176 Wn.2d at 9. The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). In *Sublett*, our Supreme Court adopted a two-part "experience and logic" test to address this issue: (1) whether the place and process

historically have been open to the press and general public (experience prong), and (2) whether the public access plays a significant positive role in the functioning of a particular process in question (logic prong). 176 Wn.2d at 72-73. Both questions must be answered affirmatively to implicate the public trial right. *Sublett*, 176 Wn.2d at 73.

Dunn argues that the trial court violated his public trial right because the trial court conducted the peremptory challenges portion of jury selection at the clerk's station. In *Love*, Division Three of this court addressed whether challenges during voir dire implicate the public trial right. There, the court held that neither "prong of the experience and logic test suggests that the exercise of cause or peremptory challenges must take place in public." *Love*, 176 Wn. App. at 920. The public trial right does not attach to the exercise of challenges during jury selection. *Love*, 176 Wn. App. at 920. We agree with Division Three that experience and logic do not suggest that exercising peremptory challenges at the clerk's station implicates the public trial right. Accordingly, we hold that the trial court did not violate Dunn's public trial right and we affirm.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Dunn makes five additional arguments. First, he argues that the information charging the three counts of unlawful imprisonment was defective because it did not include the statutory language defining "restrain." Second, Dunn argues that the jury instructions were erroneous because the instruction defining knowledge created an improper mandatory presumption. Third, Dunn argues that the prosecutor committed misconduct during closing argument by misstating the law. Fourth, he argues that the trial court erred by excluding the video that J.P. recorded on

her cell phone during the incident. Fifth, he argues that the trial court violated his right to be present by allowing the attorneys to exercise peremptory challenges during a side bar. We reject Dunn's arguments.

DEFECTIVE INFORMATION

Dunn argues that the information charging him with three counts of unlawful imprisonment was defective because it did not include the statutory definition of "restrain." However, the case law on which Dunn relies has been overruled. Under the controlling law, the information charging Dunn with unlawful imprisonment is not constitutionally defective.

The second amended information[2] charged Dunn with three counts of unlawful imprisonment as follows:

> That BRYAN VANCE DUNN, in the County of Clark, State of Washington, on or about May 13, 2012 . . . did knowingly restrain [the victim], a human being, contrary to Revised Code of Washington 9A.40.040(1), and/or was an accomplice to said crime pursuant to RCW 9A.08.020.

Clerk's Papers at 11. Dunn argues that the information is defective under *State v. Johnson*, 172 Wn. App. 112, 138-39, 297 P.3d 710 (2012), *review granted*, 178 Wn.2d 1001 (2013). In *Johnson*, Division One of this court held that definitional elements are essential elements of a crime which must be included in the charging document. 172 Wn.2d at 140.

But after our Supreme Court's decision in *State v. Allen*, 176 Wn.2d 611, 294 P.3d 679 (2013), Division One overruled its decision in *Johnson*. *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 545 n.42, 299 P.3d 37 (2013). In *Rattana Keo Phuong*, the court held that the statutory definition of "restrain" is not an essential element of the crime of unlawful

---

[2] The language regarding unlawful imprisonment is consistent throughout all three informations filed in this case.

imprisonment and, thus, does not need to be included in the charging document. 174 Wn. App. at 545.

Dunn's argument relies exclusively on the information's failure to include the statutory definition of "restrain." But under *Rattana Keo Phuong*, the information contains all the essential elements of unlawful imprisonment (i.e., knowingly restrained). Therefore, the information was not constitutionally defective. <u>Rattana Keo Phuong</u>, 174 Wn. App. at 544-45.

JURY INSTRUCTIONS

Dunn alleges that the jury instruction defining knowledge created a mandatory presumption that relieved the State of its burden of proof. The instructional error is invited error that Dunn may not challenge on appeal. "Under the doctrine of invited error, even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant has proposed an instruction or agreed to its wording." *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005).

Here, Dunn did not propose the knowledge instruction he now objects to; however, he did affirmatively agree to its wording. During the discussion regarding jury instructions, Dunn noted an error in the knowledge instruction. After the error was corrected, Dunn stated he had no other exceptions to the instructions. By noting an error in the instruction and then stating there were no additional problems with the instruction, Dunn agreed to the knowledge instruction as given and, thus, invited the error. Accordingly, we are precluded from reviewing the alleged error.

Although we do not reach the merits of Dunn's claim, we note that Dunn's claims regarding both the jury instructions and prosecutorial misconduct are based on an incorrect premise. Specifically, Dunn posits that under the unlawful imprisonment statute, Dunn was

required to know that taking a child under the age of 16 without a parent's consent was a crime. RCW 9A.40.010(6). Dunn is mistaken.

The unlawful imprisonment statute requires that the defendant knowingly restrains another person. RCW 9A.40.040. Restrain means

> to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he or she is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him or her has not acquiesced.

RCW 9A.40.010(6). Thus, the State needs to prove that Dunn knew that (1) he did not have lawful authority to restrict the girls' movements (i.e., Dunn was not the girls' parent or legal guardian), (2) the girls were under the age of 16, and (3) the girls' parents had not given their consent. Dunn did not need to know that these actions were a crime. *See* RCW 9A.08.010(1)(b) ("A person knows or acts knowingly or with knowledge when: (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense.").

Dunn relies on *State v. Warfield*, 103 Wn. App. 152, 5 P.3d 1280 (2000), to support his proposition, but Dunn's reliance on *Warfield* is misplaced. In *Warfield*, the defendants were private citizens who believed that they had the lawful authority to arrest, detain, and transport the victim based on the victim's arrest warrant from Arizona. 103 Wn. App. at 155. However, it was discovered that the misdemeanor warrant had no lawful effect in Washington. *Warfield*, 103 Wn. App. at 155. The court held that "knowingly" applied to all the elements of restraint, not simply the restriction of a person's movement. *Warfield*, 103 Wn. App. at 156. Because the defendants acted under the good faith belief that the Arizona warrant gave them the authority to arrest, detain, and transport the victim, they did not knowingly act without lawful authority.

8

*Warfield*, 103 Wn. App. at 159. *Warfield* does not require that a defendant know that his actions constitute the crime of unlawful imprisonment.

## PROSECUTORIAL MISCONDUCT

Dunn argues that the prosecutor engaged in misconduct during closing argument by misstating the law. Specifically, Dunn argues that the prosecutor argued that the jury could find Dunn guilty of unlawful imprisonment simply for intentionally driving the car. Dunn mischaracterizes the prosecutor's argument. The prosecutor's argument, although inartful, was not improper. Further, Dunn cannot show that an instruction to the jury could not have cured the error. Accordingly, Dunn's prosecutorial misconduct claim fails.

To prevail on a prosecutorial misconduct claim, a defendant must show that in the context of the record and all the trial circumstances, the prosecutor's conduct was improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To show prejudice, a defendant must show a substantial likelihood that the misconduct affected the verdict. *Thorgerson*, 172 Wn.2d at 442-43. In analyzing prejudice, we do not look at the comment in isolation but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). If a defendant fails to object to misconduct at trial, he fails to preserve the issue unless he establishes that the misconduct was so flagrant and ill intentioned that it caused an enduring prejudice that could not have been cured with an instruction to the jury. *Thorgerson*, 172 Wn.2d at 443. The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remark. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

Dunn identifies one instance in which he alleged the prosecutor misstated the law:[3]

> All I have to show to you is that he himself did it intentionally or his accomplice did it intentionally. I submit to you that both fit and that's what I have to prove to you.

RP (Aug. 16, 2014) at 40. However, the prosecutor's statement was not made in relation to the unlawful imprisonment charge. The prosecutor made the statement while discussing the elements of the residential burglary charge. To prove residential burglary, the State is required to prove that the defendant entered or remained unlawfully *with the intent to commit a crime*. RCW 9A.52.025. In this case, the predicate crime for the residential burglary charge was unlawful imprisonment (i.e., removing the girls without permission). The State was explaining that to meet the required element of residential burglary he had to show that Dunn intentionally committed unlawful imprisonment (i.e., intentionally removed the girls from the house without permission). Although the State's argument may have been inartful, it was not a misstatement of the law when considered in the context of the entire argument.

Further, Dunn cannot show that the prejudice from the comment would not have been cured by an objection and curative instruction. Here, the prosecutor's statement was a brief statement made within an extensive closing argument. Had Dunn objected, any prejudice could have been cured by referring the jury back to the proper elements of the charged crimes. Accordingly, Dunn cannot meet his burden to show prosecutorial misconduct.

---

[3] At oral argument, Dunn's appellate counsel argued that she incorporated all the prosecutor's closing arguments that she referenced in earlier sections of her briefing into her argument regarding prosecutorial misconduct. Counsel's argument is not well taken. Even assuming her brief adequately assigned error to the additional sections of the State's closing arguments for the purposes of prosecutorial misconduct, counsel fails to present any argument supporting her contention that the additional sections of the prosecutor's argument were misconduct. RAP 10.3(a)(6).

## EXCLUSION OF CELL PHONE VIDEOS

Dunn argues that the trial court improperly excluded the cell phone videos because they were relevant to impeach the girls' testimony that (1) they were fearful while in the car, (2) inappropriate touching occurred in the car, and (3) the girls cowered in the car at the first house. Further, Dunn argues that the trial court erred by excluding the cell phone videos because they were of poor quality and there would be difficulty showing them to the jury. Because the videos were irrelevant, the trial court did not abuse its discretion by excluding the cell phone videos.

We review the trial court's decision to exclude evidence for an abuse of discretion. *State v. Lord*, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007). A trial court abuses its discretion when its decision is "manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *Lord*, 161 Wn.2d at 283-84.

Criminal defendants have a constitutional right to present evidence in their defense. *State v. Hawkins*, 157 Wn. App. 739, 750, 238 P.3d 1226 (2010), *review denied*, 171 Wn.2d 1013 (2011). The evidence must be admissible; there is no constitutional right to present irrelevant evidence. *State v. Lord*, 161 Wn.2d at 294. "Evidence tending to establish a party's theory, or to qualify or disprove the testimony of an adversary, is always relevant and admissible." *State v. Harris*, 97 Wn. App. 865, 872, 989 P.2d 553 (1999), *review denied*, 140 Wn.2d 1017 (2000).

Dunn moved for admission of four separate cell phone videos that J.P. recorded on her cell phone.[4] In one of them, the screen is black for almost the entire video. Two of the other videos are only a few seconds long and, at best, the video establishes the cell phone was either in

---

[4] The cell phone videos were designated as part of the record on appeal. During oral argument both attorneys stated that they were able to play the video with sound; however, it does not appear that the video designated with the record contained the proper audio files. Even accepting Dunn's allegations regarding the audio as true (i.e., the girls were giggling and talking), our analysis regarding the relevance of the videos does not change.

the house or in the car. Dunn argued that one of the videos was relevant as impeachment evidence because it showed the three girls getting in the car after stopping at the St. John's Street house when all three girls testified they did not leave the car, although one video shows the girls getting into the car. However, there is no indication where the car is or when this occurred. Furthermore, all the girls testified that when Cruz returned from the St. John's Street house, he had a plate of food and there was no plate of food in the video. Therefore, it is unknown what the video shows. Further, the entire video is approximately two minutes long and, at best, shows the girls getting into the back of a car. There is no dispute that Dunn drove the girls around in a car. The dispute was whether Dunn knew or should have known that he did not have the legal authority to drive the girls. The video was not relevant on this point.

Moreover, the State did not have to prove that the girls were fearful while they were in the car with Dunn. The State had to prove that Dunn knew he did not have legal authority to take the girls, that the girls were under the age of 16, and that he did not have the girls' parents' permission to take the girls. The trial court did not abuse its discretion by finding that the cell phone videos were irrelevant to the facts at issue in this case.

Dunn points specifically to the trial court's statement referring to the videos as the equivalent of a "blurry photograph" and argues that the videos "show far more than a blurry photograph and demonstrate the girls' casual demeanor in the men's presence." Br. of Appellant at 30. The only video in which the viewer can even see the girls only shows one of the girls for a few brief seconds. The videos do not show the girls interacting with any of the men in the car. The only thing that can be discerned from the video is that the girls got into the car with the men and a brief glimpse of a girl's face. Nothing in the video establishes that the girls had a casual

demeanor with the men or that they lacked fear as Dunn suggests. The trial court did not abuse its discretion by excluding the cell phone video.

RIGHT TO BE PRESENT

Dunn argues that the trial court violated his right to be present by allowing the attorneys to exercise peremptory challenges at the clerk's station. Here, the record is unclear whether Dunn was present when the attorneys exercised their peremptory challenges. Dunn was present during jury voir dire, and it appears that Dunn's claim is based on the allegation that he did not join counsel at the clerk's station when they exercised their peremptory challenges. At best, this allegation is supported by the trial court's statement,

> All right, very well. It sounds like we're ready to proceed with peremptory challenges. So when you're ready, Counsel, I'll ask you to step up to the clerk's station and she will be passing a chart back and forth.

RP (Aug. 13, 2012 Jury Voir Dire) at 95. Although the trial court did not specifically call Dunn to the clerk's station with his attorney, there is no indication that he did or did not accompany counsel when counsel exercised the peremptory challenges. Because the record is unclear whether Dunn was present at the clerk's station during the exercise of peremptory challenges, the claim relies, at least in part, on facts outside the record on appeal. We do not address issues on direct appeal that rely on facts outside the record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

No. 43855-1-II

Accordingly, we affirm Dunn's convictions.

JOHANSON, J.

We concur:

WORSWICK, C.J.

LEE, J.

14